**Charles R. TART, Plaintiff–Appellant,**

v.

**HILL BEHAN LUMBER COMPANY, A Missouri Corporation, Defendant–Appellee.**

No. 93–2425.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 16, 1994.

Decided Aug. 3, 1994.

William E. Moench, St. Louis, MO, argued (Mary Anne Sedey and Kathryn S. Render, on the brief), for plaintiff-appellant.

Robert A. Kaiser, St. Louis, MO, argued, for defendant-appellee.

Before BOWMAN, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

HANSEN, Circuit Judge.

In this diversity case, Charles R. Tart appeals the district court's[1] judgment dismissing his Missouri Human Rights Act claim of discriminatory discharge following a jury verdict in favor of Hill Behan Lumber Company (Hill Behan). Tart contends that the district court erred by refusing to instruct the jury on racial harassment in the workplace or on his theory of agency. We affirm.

## I. Background

Hill Behan Lumber Company hired Tart, an African–American male, in 1977, and Tart's employment with Hill Behan continued until his discharge in June 1988 for employee theft. Patrick Behan, Chief Executive Officer and a one-sixth owner of the company, made the decision to discharge Tart after concluding that Tart had taken "dunnage" from the company's premises without the proper authorization. Dunnage is scrap shipping lumber material that Hill Behan allows employees to purchase at minimal cost to the employee. In an effort to discourage employee theft, however, employees are not allowed to remove dunnage, or any other property, from the company premises unless they obtain authorization from a supervisor for each purchase. Removing dunnage without authorization is considered employee theft, and Hill Behan requires immediate discharge of employees believed to have engaged in such conduct.

On October 26, 1988, Tart filed a complaint with the Missouri Commission on Human Rights (MCHR) alleging that he was discharged because of his race. Tart filed a second complaint with the MCHR in December 1988 which included a complaint to the Equal Employment Opportunity Commission (EEOC). In the second administrative complaint, Tart again alleged discriminatory discharge, stating that Hill Behan had not discharged white employees accused of theft, and he also alleged that he was discharged in retaliation for filing a grievance relating to overtime work. Tart received a right-to-sue letter from the MCHR on the first administrative complaint which alleged only discriminatory discharge, and he timely filed this action in federal district court.

Tart's first amended complaint in federal district court alleged not only discriminatory discharge but also retaliatory discharge and discriminatory treatment with respect to overtime work and disciplinary actions. Tart claimed that these allegations amounted to violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Missouri Human Rights Act (MHRA). The district court dismissed Tart's Title VII and Section 1981 claims before trial and retained jurisdiction over his MHRA claim based upon diversity of citizenship.

The case was tried before a jury. During the trial, Tart offered his explanation of the dunnage incident which resulted in his discharge and testified about an incident where he was deprived of overtime work. Tart stated that he was denied overtime on the basis of his race, but the grievance he filed after the incident stated that he was denied overtime in violation of his seniority rights and did not mention that race was a basis for the employer's action. Hill Behan submitted evidence showing that supervisors attempted to contact Tart to offer him the overtime work in that instance but were unable to reach him so they offered the overtime work to an employee with less seniority. Tart testified that he was often disciplined and told to get to work while white employees were not. Hill Behan offered evidence that Tart was disciplined and told to work harder because of his poor work performance.

Tart also testified that white coemployees referred to him and to other blacks with derogatory terms such as "niggers" or "lightning." After a black coemployee complained about such language, supervisor Ed Dezern held a meeting to discuss the conduct. No employees were disciplined or reprimanded,

---

1. The Honorable Steven N. Limbaugh, United States District Judge for the Eastern District of Missouri.

and Dezern told Tart to get back to work. At one point during Tart's employment, someone painted the letters KKK on a box at work. When Tart notified management and complained that it was offensive, the box was immediately destroyed. Aside from this complaint, Tart never filed or reported any incident of racial slurs or discriminatory conduct to supervisors, management, or his union.

Former Hill Behan employees also testified that coemployees at Hill Behan engaged in racial slurs and jokes at work. One witness testified that he heard Patrick Behan state, "I got rid of one of them niggers. I'll get rid of the rest of them." (Trial Tr. at 2–70.) The witness could not state precisely when he overheard this comment. Tart testified that he could not remember hearing Mr. Behan or any supervisor ever use a racial slur.

Tart requested the district court to instruct the jury on discriminatory discharge, racial harassment in the workplace, and agency in an attempt to hold Hill Behan liable for the discriminatory comments made by his coemployees. The district court found that Tart had not charged racial harassment in his administrative complaints or in his first amended complaint in federal district court and that neither Missouri law nor the evidence justified an instruction on an agency theory. The district court refused to tender an instruction on either racial harassment or agency but allowed Tart to argue that the incidents of harassment affected Patrick Behan's motivation for terminating Tart. The district court instructed the jury only on Tart's claim of discriminatory discharge.

The jury returned a verdict in favor of Hill Behan. Tart appeals, contending that the district court erred by refusing to instruct on his claim of racial harassment in the workplace and his agency theory. Tart does not attack the jury's verdict on the discriminatory discharge claim that was submitted to the jury and decided adversely to him.

## II. Discussion

■ Tart's federal suit proceeded solely under the MHRA, see Mo.Ann.Stat. § 213.-010–213.137 (Vernon Supp.1994), and he ap-

peals the district court's refusal to instruct the jury on racial harassment and agency. In a diversity action, we look to state law to assess the substantive correctness of the jury instructions. *See Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *Holst v. Countryside Enter., Inc.,* 14 F.3d 1319, 1321 (8th Cir.1994). Decisions under the MHRA, however, are guided not only by Missouri law but also by federal employment discrimination decisions which "are applicable and authoritative under the MHRA." *Lane v. Ground Round, Inc.,* 775 F.Supp. 1219, 1223 (E.D.Mo.1991) (citing *Midstate Oil v. Missouri Comm'n on Human Rights,* 679 S.W.2d 842, 846 (Mo.1984) (en banc)).

■ Before initiating a civil action under the MHRA, a claimant must exhaust administrative remedies by timely filing an administrative complaint and either adjudicating the claim through the MCHR or obtaining a right-to-sue letter. *See* Mo.Ann.Stat. §§ 213.075, 213.111(1); *see also Roberts v. Panhandle E. Pipeline Co.,* 763 F.Supp. 1043, 1048 (W.D.Mo.1991). Exhaustion requires a claimant to give notice of all claims of discrimination in the administrative complaint, but administrative complaints are interpreted liberally in an effort to further the remedial purposes of legislation that prohibits unlawful employment practices. *See Cobb v. Stringer,* 850 F.2d 356, 359 (8th Cir.1988) (interpreting Title VII). We therefore deem administrative remedies exhausted as to all incidents of discrimination that are "like or reasonably related to the allegations of the [administrative] charge." *Anderson v. Block,* 807 F.2d 145, 148 (8th Cir.1986) (internal quotations omitted) (alteration in original); *see also Williams v. Little Rock Mun. Water Works,* 21 F.3d 218, 222 (8th Cir.1994); *Satz v. ITT Fin. Corp.,* 619 F.2d 738, 741 (8th Cir.1980). Thus, the scope of the civil suit may be "as broad as the scope of the [administrative] 'investigation which could reasonably be expected to grow out of the charge of discrimination.'" *Cobb,* 850 F.2d at 359 (quoting *Griffin v. Carlin,* 755 F.2d 1516, 1522 (11th Cir.1985)); *see also Equal Employment Opportunity Comm'n v. Delight*

*Wholesale Co.,* 973 F.2d 664, 669 (8th Cir. 1992).

■ Tart filed two administrative complaints alleging racial discrimination in his discharge from Hill Behan, and he received a right-to-sue letter on the first complaint. Tart did not state a claim of racial harassment in the workplace in either administrative complaint. In the complaint for which he received a right-to-sue letter, Tart stated his charge as follows:

I. I was hired March, 1977 with the above company. I was terminated on the above date.

II. Ed Dezern handed me a paper stating that I was discharged for violation of Work Rule Number Six (6), which is stealing or being in possession of stolen property.

III. I believe that I was discharged because of my race, Black.

(Appellant's Addend. at A–6.) Tart did not claim racial harassment in his first amended complaint in federal district court or move to amend his complaint to conform to the proof he offered. Consequently, the district court refused to instruct the jury on racial harassment in the workplace. Tart contends that the district court erred because his claim of racial harassment in the workplace is sufficiently like or related to his administrative claim of a racially discriminatory discharge to be within the scope of this lawsuit.

We have considered the scope of employment discrimination suits in various contexts. *See, e.g., Williams,* 21 F.3d at 223 (holding a 1987 charge of race discrimination was separate and distinct from a 1990 claim of retaliation); *Boge v. Ringland–Johnson–Crowley Co.,* 976 F.2d 448, 451 (8th Cir.1992) (holding that discriminatory layoff is not like or reasonably related to a separate and much later alleged discriminatory termination); *Delight,* 973 F.2d at 669 (holding that constructive discharge and wage discrimination claims, discovered during the EEOC investigation and included in its conciliation procedure, were sufficiently like or related to discriminatory demotion); *Anderson,* 807 F.2d at 148–49 (holding that discriminatory suspension is not like or reasonably related to an administrative charge of discriminatory dis-

charge). However, we have not yet considered whether the scope of a discriminatory discharge claim encompasses a claim of racial harassment. In this case, we must determine whether Tart's allegation of racial harassment in the workplace is sufficiently "like or reasonably related to" his claim of discriminatory discharge so as to be deemed within the scope of this civil suit. *See Anderson,* 807 F.2d at 148. We conclude that it is not.

■ A discharge is a completed act at the time it occurs. *Cf. Boge,* 976 F.2d at 451 (stating that layoff is a completed act when it occurs). A discharge is accomplished by one who is authorized to take such action, and the motive for any given discharge is subjectively formed by the person responsible for the decision to terminate. A claimant alleging discriminatory discharge must prove that the employer relied on an impermissible motivating factor in making the employment decision, *see Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (plurality), or after setting forth a prima facie case of discrimination, that the employer's proffered nondiscriminatory reason for the discharge is a pretext for the illegal discrimination which caused him injury, *see St. Mary's Honor Center v. Hicks,* — U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To the contrary, a claim of racial harassment in the workplace focuses on the pervasiveness of the racially discriminatory conduct and also the employer's possible knowledge of that conduct and failure to take remedial action. *See Kopp v. Samaritan Health System, Inc.,* 13 F.3d 264, 269 (8th Cir.1993) (discussing elements of sexual harassment claim); *see also Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 65–67, 106 S.Ct. 2399, 2404–06, 91 L.Ed.2d 49 (1986) (treating cases of sexual harassment in the workplace the same as racial harassment).

In this case, the record demonstrates that Patrick Behan was solely responsible for the decision to terminate Tart, and Tart's discriminatory discharge claim turned upon the subjective motivation of Patrick Behan. The

incidents of alleged racial harassment by co-workers are distinct from and unrelated to the dunnage incident which resulted in Patrick Behan's decision to discharge Tart for theft. Furthermore, the conduct of coemployees throughout Tart's 11–year employment with Hill Behan offers little if any insight into Patrick Behan's motivation for terminating Tart following the dunnage incident. We therefore conclude that Tart's racial harassment claim is not sufficiently like or related to his complaint of discriminatory discharge to be deemed within the scope of this lawsuit.

In a situation very similar to the case at hand, the Seventh Circuit held that a claim of racial harassment is not like or reasonably related to an administrative charge of discriminatory discharge. *See Rush v. Mc-Donald's Corp.,* 966 F.2d 1104, 1110–12 (7th Cir.1992). In *Rush,* the claimant's administrative complaint charged racial discrimination both in general terms and in the specific event of her termination. 966 F.2d at 1110. Rush then brought a civil suit in federal district court in which she included a claim of racial harassment, a claim she had not specifically raised in her administrative complaint. *Id.* Rush's failure to state racial harassment in her administrative complaint proved fatal to her claim of racial harassment in federal district court. *Id.* at 1111–12. The Seventh Circuit held, "it will not suffice to file general charges with the [administrative agency], as was done here, and then to expect that this allegation will permit all claims of race-based discrimination in a subsequent lawsuit." *Id.* at 1112. We agree.

Tart contends that his racial harassment claim would have been within the scope of the administrative investigation and therefore it was properly raised in this civil suit. *See Delight,* 973 F.2d at 668–69. We disagree. Had the agency investigated Tart's discriminatory discharge claim, the scope of the investigation would have been no broader than a search for evidence relating to the discharge itself and the motivations underlying the discharge. The investigation would have sought evidence concerning the actions and motivations of Patrick Behan relating to Tart's discharge, the circumstances surrounding the specific incident out of which the termination decision arose, and other incidents only to the extent that they tended to demonstrate Patrick Behan's motives or attitudes. All of the alleged incidents of racial harassment were separate in time and distinct in kind from the incident which preceded Tart's discharge. Thus, contrary to Tart's contention, an administrative investigation of his discriminatory discharge complaint would not reasonably be expected to uncover evidence of prior racial harassment at Hill Behan.

■ Tart also contends that, after almost three years of discovery during which Hill Behan heard all of Tart's evidence relating to racial harassment, Hill Behan cannot claim that it lacked notice of the racial harassment claim. This argument ignores the mandatory exhaustion requirement. *See Williams,* 21 F.3d at 223 (allegations in complaint outside the scope of EEOC charge circumscribe the investigatory and conciliatory role of EEOC, just as does a failure to timely file the charge). Even if through discovery Hill Behan became aware of the evidence that Tart intended to introduce, an awareness of the evidence does not amount to notice of an unrelated, uncharged theory of discrimination. The background incidents that Tart offered to demonstrate a racially biased climate at Hill Behan might have had some probative value on the issue of whether Hill Behan's treatment of Tart was motivated by discrimination or insofar as they indicated an attitude of discrimination on the part of Patrick Behan. *See Estes v. Dick Smith Ford, Inc.,* 856 F.2d 1097, 1103 (8th Cir.1988). The district court allowed Tart to argue the evidence in this fashion to the jury. Because Tart's claim of racial harassment is not like or related to his administrative claim of discriminatory discharge, however, the mandatory exhaustion requirement is not met and thus, the theory of racial harassment could not be submitted as a separate claim. We conclude that the district court did not err in refusing to instruct the jury on racial harassment.

Because we conclude that racial harassment was not within the scope of this suit, we need not evaluate whether Tart presented

sufficient evidence to justify an instruction on racial harassment.

■ We also conclude that the district court properly refused to give Tart's requested agency instruction. There was no dispute that Patrick Behan, chief executive officer and a one-sixth owner of the company, was solely responsible for Tart's discharge and that he had the authority to bind the company on the termination decision. Since no evidence supported an agency theory, the district court did not err by refusing to give the instruction. *See Wilson v. Jotori Dredging, Inc.*, 999 F.2d 370, 372 (8th Cir.1993) ("There is no error in refusing to submit a theory not supported by any evidence."). Furthermore, because the racial harassment claim was not within the scope of this case, the district court did not err in refusing to instruct the jury on agency based upon the claimed racial harassment by coemployees.

## III. Conclusion

The district court did not err in refusing to instruct the jury on Tart's claim of racial harassment and his agency theory. Accordingly, we affirm the judgment of the district court.