Peggy **KIMZEY**, Plaintiff,

v.

**WAL–MART STORES, INC.** and **Michael Mais**, Defendants.

No. 94–4195–CV–C–5.

United States District Court, W.D. Missouri, Central Division.

May 23, 1995.

Carla Holste, Carson & Coil, Jefferson City, MO, for plaintiff.

Jack T. Bangert, Steven Steinhilber, Sherman, Taff & Bangert, Kansas City, MO, for defendants.

## ORDER

SCOTT O. WRIGHT, Senior District Judge.

Before the Court is defendants' motion for summary judgment, plaintiff's response and defendants' reply. For the reasons set forth below, defendants' motion will be granted in part and denied in part.

## I. Background

Plaintiff Peggy Kimzey worked as an associate at the Warsaw Wal–Mart Store from August 9, 1988 until January 31, 1989, when she resigned to spend time with her ailing mother. During this period of time, plaintiff worked in Wal–Mart's receiving department. Plaintiff's immediate supervisor was Bud Brewer and the assistant manager with supervisory responsibility over the receiving department was Michael Mais.

Plaintiff returned to work at the Warsaw store on April 11, 1989 and again worked in the receiving department below Brewer and Mais. In April of 1993, plaintiff resigned her employment with Wal–Mart. On May 6, 1994, plaintiff filed this action against Wal–Mart Stores, Inc. and Michael Mais. Count I of plaintiff's Complaint alleges that defendants discriminated against her in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, ("Title VII"). Count II alleges that defendants violated the Missouri Human Rights Act, Mo. Rev.Stat. § 213.010, *et seq.*, ("MHRA").

## II. Standard of Review

▮ A motion for summary judgment should be granted if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Rafos v. Outboard Marine Corp.*, 1 F.3d 707, 708 (8th Cir.1993) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). A defendant who moves for summary judgment has the burden of showing that there is no genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). A plaintiff opposing a properly supported motion for summary judgment may not rest upon the allegations of his pleadings, "but must set forth specific facts showing there is a genuine issue for trial." *Id.*

### III.  Analysis

■ Plaintiff asserts her Complaint is based on two theories: hostile working environment and disparate treatment. Defendants argue they are entitled to summary judgment on plaintiff's disparate treatment claim. This Court has reviewed plaintiff's Complaint and finds scant support for a disparate treatment claim. Moreover, plaintiff completely failed to respond to defendants' motion for summary judgment concerning the disparate treatment claim. Accordingly, defendants' motion will be granted with regard to plaintiff's disparate treatment claim.

■ Defendants also contend they are entitled to summary judgment on plaintiff's hostile working environment claim. Defendants argue plaintiff cannot establish a prima facie case for this claim. The Court does not agree.

■ "When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Harris v. Forklift Sys., Inc.,* — U.S. —, —, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) (citations omitted).[1] "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." *Id.* "This is not, and by its nature cannot be, a mathematically precise test." *Id.* at —, 114 S.Ct. at 371. "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interferes with an employee's work performance." *Id.*

Plaintiff's deposition testimony described specific incidents of harassment as well as a generally hostile working environment in the Wal–Mart receiving department. Plaintiff testified that both Brewer and Mais made numerous comments to her that she considered abusive and offensive. Specifically, one time when plaintiff was bending over to count merchandise, Brewer and Mais stood behind her, put a screwdriver to her back, and started laughing. When she turned around and asked what they were doing, Mais responded, "I just thought I had a place to put this" and continued laughing. Plaintiff testified she tried to return to her work, but the screwdriver was again put to her back. Plaintiff stated that she again stood up and told Brewer and Mais she didn't think their behavior was funny. Mais responded, "You never know, you might like it," as Brewer and he continued to laugh.

Plaintiff also described an incident where Mais and Brewer made jokes and comments about the plaintiff's breasts being in the way when she moved merchandise. Plaintiff testified that Brewer attempted to kiss her on one occasion, and that she rejected his attempt and walked away. Plaintiff stated that Brewer often made comments about her "rear-end."

Plaintiff testified that Brewer considered women to be "goddamn dummies" and called them this if one irritated him. Plaintiff testified that the term was reserved for women and not used to refer to male associates. Plaintiff stated that the way in which Brewer talked about women in general was derogatory, such as referring to an overweight female associate as a "fat bitch."

Plaintiff testified that, as time went on, Brewer became increasingly possessive of her and would not let her out of his sight. Plaintiff described the environment created by Brewer as abusive, intimidating and demeaning.

---

1. The MHRA is interpreted with reference to Title VII. *See Tart v. Hill Behan Lumber Co.,* 31 F.3d 668, 671 (8th Cir.1994). Accordingly, analysis of plaintiff's MHRA claims is subsumed in the discussion of plaintiff's Title VII claims.

Plaintiff's deposition testimony concerning the hostile work environment is supported by the testimony of her coworkers. Nola Smith testified that Brewer would use obscenities toward female associates, but would not treat male associates in the same manner. Vera Braden also testified that Brewer treated women and men differently. Braden stated that Brewer was "buddy-buddy" with male associates, but was combative with and yelled at female associates. Braden testified that Mais treated male associates as equals, as though they were as intelligent as he, but that he treated females as though they were not as intelligent. Finally, Patricia Kreisel testified that Brewer spoke differently to male associates and female associates. She stated that "females were made to look real small when he got after us," but that he "never really said anything to [male associates]."

Plaintiff testified that she complained to Mais about the work environment created by Brewer, but that her complaints fell on deaf ears. Plaintiff stated that Mais treated her as a "gripping woman" and would not take action to remedy the problem. Plaintiff believed that further complaints to management would not help her and could result in retaliation. Plaintiff testified that she quit her job because Mais would not do anything to remedy the situation.

Defendants contend that the incidents plaintiff complains of do not support her claim that she was subjected to a hostile working environment because she admits to participating in the informal environment of the receiving area by using crude language and engaging in "tomfoolery." Defendants miss the point. Accepting and participating in an informal working environment does not invite or sanction, and certainly does not legalize, a hostile and abusive working environment.

Viewing the evidence in the light most favorable to plaintiff, the Court finds that plaintiff could prove a prima facia case. Plaintiff has met her burden of establishing that material facts are in dispute. Accordingly, defendants' motion for summary judgment will be denied with regard to plaintiff's hostile working environment claims.

Defendants next contend they are entitled to a judgment which precludes plaintiff from submitting any claim for lost income or other actual damages. Defendants argue that plaintiff admitted in her deposition testimony that she did not seek another job after resigning from Wal–Mart. Thus, defendants assert, plaintiff failed to mitigate her damages and is not entitled to recover any actual damages.

Defendants base their argument on the fact that plaintiff stated that she did not submit any *written* applications for employment after leaving Wal–Mart. However, plaintiff also testified that she went to job service and that she called several different stores and a factory in her town in an effort to find out if there were any jobs available. Mitigation of damages is obviously an issue for the jury to decide in this case. Defendants' contention that they are entitled to judgment on this issue is without merit.

Accordingly, it is hereby

ORDERED that defendants' motion for summary judgment (document 28) is granted as to plaintiff's "disparate treatment" claims. It is further

ORDERED that defendants' motion for summary judgment (document 28) is denied as to plaintiff's "hostile working environment" claims.