**Valerie SCHWEBACH, Plaintiff,**

v.

**BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA– LINCOLN, Defendant.**

No. 4:99CV3023.

United States District Court, D. Nebraska.

Aug. 30, 2000.

Eric B. Brown, Healey, Wieland Law Firm, Thom K. Cope, Polsky, Cope Law Firm, Lincoln, NE, for Valerie Schwebach, plaintiffs.

David R. Buntain, Cline, Williams Law Firm, John C. Wiltse, University of Nebraska, Lincoln, NE, for Board of Regents, of the University of Nebraska, defendants.

## MEMORANDUM OPINION

STROM, Senior District Judge.

This matter is before the Court on the defendant's motion for summary judgment (Filing No. 42) and plaintiff's motion for sanctions (Filing No. 56 in the form of an Affidavit). Plaintiff, Valerie Schwebach, alleges that the defendant violated Title VII of the Civil Rights Act of 1964, as amended. Specifically, plaintiff claims that defendant failed to remedy a hostile work environment due to sexual harassment, retaliated against her for filing NEOC and EEOC charges, and constructively discharged her. Defendant has denied these claims.

Also at issue in this case is the plaintiff's motion for sanctions (Filing No. 56). Plaintiff claims, via Affidavit of Thom K. Cope, attorney for the plaintiff, that the defendant destroyed certain documents pertinent to this litigation even though the defendant knew that the plaintiff filed charges against defendant with the EEOC. Plaintiff claims the destruction of these documents warrants sanctions. Defendant admits that the documents were destroyed, but asserts that their destruction was to protect confidentiality and was not done in bad faith. After consideration of the arguments and evidence submitted by the parties, the Court will grant the defendant's motion for summary judgment and deny the plaintiff's motion for sanctions.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Guinness Import Co. v. Mark VII Distrib. Inc.*, 153 F.3d 607, 611 (8th Cir.1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). However, disputes over facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment. *Guinness Import Co.*, 153 F.3d at 611. On a motion for summary judgment, the court must view all evidence and inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505. Finally, "[b]ecause discrimination cases often turn on inferences rather than on direct evidence, we are particularly differential to the nonmovant." *Snow v. Ridgeview Medical Ctr.*, 128 F.3d 1201, 1205 (8th Cir.1997).

## II. BACKGROUND

The plaintiff, Dr. Valerie Schwebach, is a female who began working for the University of Nebraska–Lincoln ("UN–L") as an assistant professor in the Department of Political Science in 1994. She was a faculty member with UN–L for approximately four academic years. Dr. David Forsythe was the chair of the department at the time the plaintiff was hired and until the spring of 1998, when he was replaced by Mr. John Comer. Throughout her employment, the plaintiff received favorable evaluations. Although she had not received tenure at the time she resigned from her employment with UN–L, she was on track for and would have been eligible to receive tenure after six years of employment.

The plaintiff alleges the following as the chronology of events as a basis for her Title VII claims.

1) Fall of 1994—plaintiff was periodically subjected to kissing noises and catcalls made by the male students in her International Securities course. A number of students in the class indicated in their end of semester evaluations that male students acted in a disrespectful manner toward the plaintiff. The evaluations were routinely reviewed by the department chair, which at the time was Dr. Forsythe.

2) December 1994—plaintiff was grading papers from graduate students and allegedly found a pubic hair in one of the papers. Plaintiff reported this incident and the conduct of the males in her International Securities class to Dr. Forsythe; he suggested that they engage in "watchful waiting."

3) Spring of 1995—a female graduate student informed the plaintiff that she was subjected to unwelcome sexual conduct from the professor she was assigned to as a teaching assistant. The student reported the conduct to Dr. Forsythe, who took no action.

4) May of 1995—an unnamed graduate student found two or three flyers posted on the first floor of the building which houses the Political Science Department. The flyers repeated derogatory statements about the plaintiff. The student showed one of the flyers to Evelyn Fink, also a professor in the Political Science Department, who took the flyer to Dr. Forsythe. Dr. Forsythe instructed the student and Professor Fink not to tell the plaintiff about the flyer. The plaintiff was informed of the flyer's existence about six days later. Dr. Forsythe met with the plaintiff but did not show her the flyer. He stated that the flyer was computer generated. Therefore, Dr. Forsythe claimed he had no way of finding the culprit. According to the plaintiff, Dr. Forsythe did not contact or inform any other members of the department regarding this situation.

5) August of 1995—Dr. Forsythe distributed a memo stating that there was too much criticism within the department.

6) Spring of 1996—another female graduate student in the political science department informed the plaintiff that the student was harassed the previous year by David Rapkin, a professor to whom she was assigned as teaching assistant. The student informed plaintiff that the harassment was obvious to the undergraduate students and that she was close to dropping out of school. The student told the plaintiff that she reported the incidents to Dr. Forsythe, who regarded the situation as the student's "culture shock." The student also talked with John Comer and asked to be taken off her assignment with Mr. Rapkin. She was not removed and the harassment increased. Mr. Rapkin also reduced the student's responsibilities. Finally, when the student took a class with Mr. Rapkin, she received a low grade on a term paper. According to Mr. Rapkin, the topic she chose, difficulties women face in International Relations, was not relevant. Plaintiff encouraged the student to go to the Committee on Departmental Relations to voice her complaints. She did so, but the Committee declined to discuss the incident with Mr. Rapkin and thought the best course of action was for the student to confront Mr. Rapkin directly.

7) Spring of 1996—the plaintiff and two other professors in the political science department reported their concerns about harassment issues in the department to Dean Brian Foster.

According to the plaintiff, Dean Foster ignored the concerns.

8) Fall of 1996—plaintiff overheard male graduate students in the room next to her office. These graduate students made derogatory remarks about the breasts of a female undergraduate student. Plaintiff did not report this conversation until the spring of 1997, at which time she discussed the incident with the graduate chair at the time, Elizabeth Theiss–Morse, and Jeff Spinner.

9) Spring of 1997—another member of the Political Science Department was subjected to a racially harassing note slid under his door. According to the plaintiff, the University was outraged and wanted to investigate the incident. At this time, the University told the plaintiff that they could not investigate other anonymous postings.

10) July 25, 1997—plaintiff filed a complaint with UN–L's Academic Rights and Responsibilities Committee ("ARRC") alleging that complaints of harassment directed at males received a greater response than complaints of harassment directed at females. Dr. Forsythe responded to the complaint and sent that response to individuals in the department, including Amy Longo, Linda Crump and Dean Brian Foster. Plaintiff claims this action violated ARRC policy that all communications surrounding such a complaint only be sent to the Special Committee Chair.

11) July 31, 1997—plaintiff filed her first complaint with the NEOC, EEOC charge number 32E971241. (Depo. of Schwebach, Exhibit 8).

12) October 21, 1997—plaintiff filed her second complaint with the NEOC, EEOC charge number 32E980043. (Depo. of Schwebach, Exhibit 9).

13) March of 1998—plaintiff claims that she was excluded from a department function in retaliation.

13) March of 1998—John Comer was appointed Chairman of the Political Science Department.

14) March of 1998—a joke concerning the relations of President Clinton and Monica Lewinsky were posted on two bulletin boards: one in the department office and one on the board across from plaintiff's office. Plaintiff informed the Affirmative Action office, which directed Mr. Comer to select an out-of-the-way board for the posting of non-university business. Mr. Comer chose the bulletin board across from the plaintiff's office, and plaintiff informed the Affirmative Action office of this selection.

15) March of 1998—jokes that were allegedly derogatory towards females were posted on the board outside plaintiff's office. Plaintiff again reported this to the Affirmative Action office. Plaintiff removed the materials herself. According to the plaintiff, she at one point felt so persecuted that she canceled her classes and went home. Mr. Comer issued a new policy forbidding the posting of any material not related to official University business.

16) In the spring of 1998, a professor used class time to discuss plaintiff and her various complaints against the department.

## III.  DISCUSSION

### A.  Hostile Work Environment Due to Sexual Harassment.

#### 1.  July 31, 1997, charge.

The plaintiff has articulated numerous incidents in support of her claims of hostile work environment due to sexual harassment. The incidents occurred over approximately four years. A few of these

personally involved the plaintiff but the rest did not. The first issue is whether the plaintiff meets the requirement that an EEOC complaint be filed within 300 days of the alleged discriminatory conduct.[1] *See* 42 U.S.C. § 2000e–5(e)(1). Generally, allegations of harassment occurring outside the 300 days are not actionable under Title VII for failure to exhaust administrative remedies. *See e.g., Ellis v. Wal–Mart Stores, Inc.* 952 F.Supp. 1513, 1519 (M.D.Ala.1996) (holding that plaintiff failed to file a timely charge with the EEOC and thus, he had not satisfied the administrative prerequisites to filing an action in federal court).

▇▇▇ The plaintiff's charge filed July 31, 1997, included allegations from May 3, 1995, to June 10, 1997. Events occurring prior to September 24, 1996,[2] may only be included in this action if the plaintiff establishes a continuing violation. *Klein v. McGowan,* 198 F.3d 705 (1999). Specifically, when the alleged harassment manifests itself over time, rather than as a series of individual and discrete acts, the plaintiff may be entitled to the continuing violation exception. *Klein,* 198 F.3d at 709. To prove the acts of harassment were closely related so as to constitute a continuing violation, "the plaintiff must demonstrate that some incident of harassment occurred within the 300 day limitations period and that there is a sufficient nexus between that incident and the other instances of harassment." *Id.* The plaintiff must first show that the incidents of which she complains occurring between September 24, 1996, and July 31, 1997, constitute hostile work environment due to sexual harassment.

▇▇▇ To establish a claim of hostile work environment due to sexual harassment by a non-supervisory employee, plaintiff must demonstrate that: (a) she belongs to a protected group; (b) she was subjected to unwelcome sexual harassment; (c) the harassment was based on sex; (d) the harassment affected a term, condition, or privilege of employment; and (e) the employer knew or should have known of the harassment and failed to take proper remedial action. *Scusa v. Nestle U.S.A. Co., Inc.,* 181 F.3d 958, 965 (8th Cir.1999). The Court finds, and it is not disputed, that the plaintiff is a member of a protected class. The second element is whether the plaintiff was subjected to unwelcome sexual harassment. Conduct is considered unwelcome if the plaintiff neither solicits or invites it and regards the conduct as undesirable or offensive. *Scusa,* 181 F.3d at 966.

▇▇▇ Within the 300 days prior to the filing of her first charge, plaintiff does not allege any incidents of unwelcome sexual harassment directed towards her. She merely asserts that another faculty member's complaint concerning harassment was handled expediently. In addition, she overheard two graduate students discussing the breasts of a female student. This was a private conversation between two male students, and there is no evidence suggesting they were aware that anyone could hear them. She does not allege any unwelcome sexual harassment directed towards her within the statutory time limit, and the two incidents which she references within the 300 days do not create a hostile work environment due to sexual harassment.

Plaintiff's failure to establish her underlying claim of hostile work environment due to sexual harassment also defeats her claim of a continuing violation. She did not show a hostile work environment due to sexual harassment within the statutory time frame, and thus clearly cannot establish a nexus, let alone a substantial nexus, between incidents occurring within the

---

1. Plaintiff must file suit within 90 days of receiving the right-to-sue letter from the EEOC. 42 U.S.C. § 2000e–5(f)(1). Plaintiff has met this requirement.

2. September 24, 1996, represents 300 days prior to the July 31, 1997, charge.

statutory time frame and those occurring outside the time frame.

2. October 21, 1997, charge.

The plaintiff also alleges incidents of hostile work environment due to sexual harassment occurring after she filed her second EEOC charge. These incidents were not included in her charge but are referenced in a letter plaintiff wrote to the EEOC.[3] (Depo. of Schwebach, Exhibit 12). Specifically, these events include two separate postings of allegedly harassing material.[4]

■ Administrative remedies of events occurring outside the scope of an EEOC charge are generally not considered exhausted because a claimant has not given notice to all the claims of discrimination. However, if those events are like or reasonably related to those contained in the EEOC charge, administrative remedies will be deemed exhausted. *Tart v. Hill Behan Lumber Co.*, 31 F.3d 668, 671 (8th Cir.1994). In other words, "the scope of the civil suit may be 'as broad as the scope of the' administrative 'investigation which could reasonably be expected to grow out of the charge of discrimination.'" *Tart*, 31 F.3d at 671 (citing *Cobb v. Stringer*, 850 F.2d 356, 359 (8th Cir.1988)).

■ Plaintiff's October 21st charge involves a claim for retaliation in violation of Title VII and the Nebraska Fair Employment Practices Act. She does not assert any claims of hostile work environment due to sexual harassment in this charge. Retaliation involves adverse employment actions taken as a result of employee discrimination complaints, among other protected activities. Retaliation requires a showing of a causal connection between the discriminatory activity and the adverse employment action. *Scusa*, 181 F.3d at 968. These inquiries are wholly unrelated to whether an individual was subjected to a hostile work environment due to sexual harassment. Harassment focuses on the pervasiveness of discriminatory conduct and the employer's possible knowledge of that conduct. *Tart*, 31 F.3d at 672. The events occurring after plaintiff filed her October 21st charge are not like or reasonably related to those contained in the charge. Plaintiff, therefore, has failed to exhaust her administrative remedies as to those claims, and they are not actionable under Title VII.

B. Retaliation.

■ Title 42, U.S.C. § 2000e–3 makes it unlawful for an employer to discriminate against an employee for that employee's opposition to the employer's discriminatory practices or for the employee's filing or participation in an investigation, proceeding or hearing under Title VII. To demonstrate a claim for retaliation, the plaintiff must show: "(1) she filed a charge of harassment or engaged in [some] other protected activity; (2) her employer subsequently took an adverse employment action against her; and (3) the adverse action was causally linked to her protected activity." *Scusa*, 181 F.3d at 968.

Plaintiff filed her first Charge of Discrimination with the EEOC on July 31, 1997. She filed a subsequent Charge on October 21, 1997, claiming retaliation. Plaintiff meets the first element of her retaliation claim in that she had filed a

---

3. An argument can be made that the letter acted as an amendment to her October 21, 1997 charge. However, in *Sloop v. Memorial Mission Hosp.*, 198 F.3d 147, 149 (4th Cir. 1999), the Fourth Circuit Court of Appeals addressed a similar issue, wherein they found "it would be objectively illogical to view a private letter from a complaining party to the EEOC as constructively amending a formal charge, given one of the purposes of requiring a party to file charges with the EEOC is to put the charged party on notice of the claims raised against it."

4. These incidents cannot be considered part of a continuing violation so as to make them actionable under plaintiff's July 31st charge. As noted previously, plaintiff failed to make the requisite showing that at least one incident occurred with the 300 day time limit.

charge of harassment. Plaintiff also claims that she opposed the alleged unlawful actions of the defendant. The Court need not address this argument as it finds no adverse employment action occurred.

▉ Plaintiff must demonstrate that her employer took an adverse action against her. An adverse employment action is "a tangible change in working conditions that produces a material employment disadvantage." *Spears v. Missouri Dep't of Corrections and Human Resources*, 210 F.3d 850, 853 (8th Cir.2000). The Eighth Circuit also stated: "... minor changes in working conditions that merely inconvenience an employee or alter an employee's work responsibilities" do not constitute adverse employment actions. *Spears*, 210 F.3d at 853.

▉ The adverse action of which the plaintiff complains is Dr. Forsythe's response to her ARRC complaint, which went to various individuals in the department and which included a copy of her EEOC complaint. Plaintiff also claims that a professor in the department made comments during class about the plaintiff and her complaints against the department. Finally, plaintiff claims that she was excluded from a department function in retaliation for her filing complaints/charges against the department. Defendant, on the other hand, claims these actions do not constitute actionable adverse employment actions under Title VII.

From the outset, it is important to note that a plaintiff may allege in a lawsuit only those incidents contained in the EEOC charge, unless the subsequent incidents are reasonably related to those contained in the charge. *Tart v. Hill Behan Lumber Co.*, 31 F.3d 668, 671 (8th Cir.1994). The plaintiff does allege incidents outside the EEOC charge; however, the Court need not address the relationship of these incidents to those contained in the EEOC charge. Even assuming the incidents are reasonably related, plaintiff fails to demonstrate an adverse employment action.

▉ Even combining all the incidents plaintiff claims are retaliatory, none of them involve a tangible change in her working conditions producing a material disadvantage. Examples of such changes include termination, reduction in pay or benefits, and changes affecting an employee's future career prospects, such as undeserved poor evaluations. Actions that make an employee unhappy are not actionable under Title VII. *Manning v. Metropolitan Life Ins. Co.*, 127 F.3d 686, 692 (8th Cir.1997).

C. Constructive Discharge.

Plaintiff also alleges she was constructively discharged. Although constructive discharge may be an adverse employment action, the incidents surrounding her constructive discharge claim occurred after she filed her EEOC charge. Again, the plaintiff would have to demonstrate the incidents were reasonably related to those alleged in her EEOC charge to satisfy the administrative prerequisites to filing a lawsuit. The Court need not address the relationship between incidents found in plaintiff's October 21st EEOC charge and those occurring after the charge was filed. Even assuming the incidents were related, plaintiff has failed to demonstrate she was constructively discharged.

▉ Constructive discharge occurs when an employer deliberately renders an employee's working conditions intolerable with the intent of forcing the employee to leave employment. *Spears*, 210 F.3d at 854. This determination is based upon an objective standard, not an employee's subjective feelings. *Id.* "[A]n employee may not be unreasonably sensitive to her working conditions." *Id.* (citing *West v. Marion Merrell Dow, Inc.*, 54 F.3d 493 (1995)). Plaintiff claims that the defendant knew of her intent to quit but did nothing to remedy the alleged harassment. Thus, the plaintiff claims the defendant could have reasonably foreseen that plaintiff would, in fact, carry out her intent to terminate

employment with the defendant. Specifically, plaintiff states that Mr. Comer e-mailed her on March 5, 1998, hoping to change plaintiff's mind about quitting. However, the difficulty with the plaintiff's assertion of constructive discharge is that she does not allege any incidents after she informed defendant of her desire to quit that would suggest defendant intended to make her environment so intolerable as to force her to quit. In fact, Mr. Comer, around March of 1998, took action to stop the posting of the derogatory flyers in the department. This undisputed fact, and the fact that the plaintiff does not point to any other actions by the defendant, defeats her constructive discharge claim.

D. Sanctions.

This claim is moot because of the Court's previous findings in this memorandum opinion. A separate order will be entered in conformity with this memorandum opinion.