Yette ELLIS, Winston S. Smith, Plaintiffs,

v.

WAL–MART STORES, INC., Defendant.

Civil Action Nos. 95–D–925–N, 95–D–1135–N.

United States District Court, M.D. Alabama, Northern Division.

Sept. 4, 1996.

Lucie U. McLemore, Montgomery, AL, for plaintiffs.

Barry V. Frederick, William K. Hancock, Charles A. Powell, III, David W. Proctor, William G. Somerville, III, John W. Sheffield, Spencer A. Kinderman, Jennifer F. Swain, Birmingham, AL, for defendant.

## MEMORANDUM OPINION

DE MENT, District Judge.

Before the court is defendant Wal–Mart Stores, Inc.'s motion filed April 12, 1996, for summary judgment on all claims asserted by plaintiff Winston Smith. The plaintiff responded in opposition on May 1, 1996, to which the defendant replied on May 17, 1996. Plaintiff Winston Smith asserts that the defendant fired him because of his race and religion and further harassed him because of his religion, all in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e–2000e–17. After careful consideration of the evidence, the court finds that the defendant's motion for summary judgment is due to be granted.

## JURISDICTION

Based upon 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights jurisdiction), the court properly exercises subject matter jurisdiction over this action. The parties do not contest personal jurisdiction or venue.

## STANDARD OF REVIEW

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the

pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id.; see also Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

### FINDINGS OF FACT

Plaintiff Winston Smith, a black male, was hired in June 1989 to work at Wal–Mart store number 930 in Montgomery, Alabama, as a part-time stockman. He was a part-time employee throughout his employment at Wal–Mart. The defendant asserts that the plaintiff was terminated on December 23, 1993, as part of a reduction-in-force ("RIF"). According to the defendant, the district manager instructed management to implement the RIF due to a decrease in sales.

The defendant asserts that Store Manager Gary Barnes ("Mr. Barnes") and Co–Manager Artie Moore ("Mr. Moore") terminated more than thirty employees and decided which employees to terminate based upon their performance. First, all of the temporary employees were terminated. Next, those employees who had the lowest ratings on their performance evaluations and the most performance coaching forms ("write-ups") were terminated. Mr. Barnes and Mr. Moore reviewed each employee's personnel file in making this determination.

The record reflects that the plaintiff had received write-ups for failing to report to work on time, taking breaks without clocking out and writing several checks to the store that were returned for insufficient funds.

Throughout his employment, five different managers had issued him write-ups. According to the defendant, no other employee was retained who had as many write-ups and performance ratings as low as the plaintiff had. The plaintiff testified that he did not know anything about any other employee's disciplinary or performance record.

After the plaintiff's termination, the next stockpersons hired were Mike Todd, Christopher Marshall and Leonard Scott, two of whom are white. They were hired in March 1994. Throughout the plaintiff's employment at Wal–Mart, there were two white stockpersons and more than twenty black stockpersons at store number 930.

The plaintiff contends that the real reason he was terminated was because of his race and religion. The plaintiff contends that on or about April 15, 1993, he spoke with Mark Ferris (Mr. Ferris), the Store Manager at that time, and stated that he would not be able to work on Wednesday evening or Sunday because he was in the process of "becoming a deacon." Pl.'s Dep. at 27–28; Pl.'s "Affidavit for EEOC Charge," at ¶ 3. The plaintiff told Mr. Ferris that he needed these days off for "Bible study" and to "deliver communion and visit the sick and shut in." Pl.'s Dep. at 28. According to the plaintiff, Mr. Ferris agreed. *Id.*

Sometime within the next three months, the plaintiff asserts that Mr. Ferris asked him to work some on Sundays because the store was "shorthanded." *Id.; see also* Pl.'s "Affidavit for EEOC Charge," at ¶ 3. The plaintiff agreed but stated that, because "sometimes the [church] service [runs] over," he may not be able to come to work until 2:00 p.m. or 2:30 p.m. Pl.'s Dep. at 28. At that point, the plaintiff began to work on Sunday. *Id.* Thereafter, sometime in September 1993, the plaintiff asserts that Mr. Moore criticized him for coming to work ten minutes after his scheduled time. *Id.* at 29–30. According to the plaintiff, Mr. Moore told him that "if you can't get here at 2:00 p.m., then we [would] rather ... you not ... come at all." *Id.; see also* Pl.'s "Affidavit for EEOC Charge," at ¶ 4.

"[T]wo days after" this incident, the plaintiff testified that he wrote a letter addressed to Mr. Barnes and Mr. Moore and, the next day, hand-delivered a copy to each of them. Pl.'s Dep. at 31. The plaintiff stated in the letter that he could not work on Wednesday evening or Sunday.[1] *Id.* at 25–27. After that point, the plaintiff was never required to work on Wednesday evening or Sunday. *Id.* at 31–32, 103.

The plaintiff, however, asserts that, shortly after he delivered this letter to Mr. Barnes and Mr. Moore, they reduced his hours from an average of twenty-four hours per week to an average of eight hours per week. *Id.* at 34–35, 42–43. The plaintiff has not submitted any documentation in support of this assertion. The defendant, however, has filed the plaintiff's payroll records for the 1993 year, the accuracy of which has not been challenged by the plaintiff. These records reveal how many hours the plaintiff worked and his earnings for each two-week pay period. From January 8, 1993, to September 3, 1993, the plaintiff worked approximately 12.37 hours per week. From September 3, 1993, to his termination date on December 24, 1993, the hours the plaintiff worked and the pay he received for each two-week pay period are as follows:

| | Hours Worked | Gross Earnings |
|---|---|---|
| 09/04/93 to 09/17/93 | 24.72 | $168.27 |
| 09/18/93 to 10/01/93 | 14.42 | $ 90.30 |
| 10/02/93 to 10/15/93 | 30.05 | $183.59 |
| 10/16/93 to 10/29/93 | 33.99 | $206.74 |
| 10/30/93 to 11/12/93 | 32.14 | $196.33 |
| 11/13/96 to 11/26/93 | 41.97 | $254.22 |
| 11/27/93 to 12/10/93 | 59.76 | $360.22 |
| 12/11/93 to 12/24/93 | 45.13 | $273.12 |

The plaintiff further asserts that on one occasion in November 1993, Assistant Manager Willie Morgan uttered a "negative" remark about the plaintiff's religious beliefs. Pl.'s Dep. at 32, 49. While he does not remember exactly what Mr. Morgan said, the plaintiff testified that the comment was "something smart" but that it "went in one ear and came out the other." *Id.* at 32.

Wal–Mart company policy requires that former associates re-apply in order to be considered for rehire. The plaintiff was rated eligible for rehire on his exit interview form. Mr. Barnes states that he told the plaintiff that he could re-apply in the future if he desired but that the plaintiff never re-applied at any Wal–Mart store.

The plaintiff filed a charge of race and religion discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 16, 1994, and the EEOC mailed the plaintiff a "notice of Right to Sue" on May 30, 1995. Thereafter, the plaintiff commenced this action on August 29, 1995. In his complaint, the plaintiff asserts a Title VII claim for race discrimination based on a theory of wrongful termination. The plaintiff also asserts Title VII claims for religion discrimination based upon the theories of hostile work environment and wrongful termination.

## DISCUSSION

In an action alleging disparate treatment under Title VII, a plaintiff must prove an intentional discriminatory motive by presenting either direct or circumstantial evidence. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 519, 113 S.Ct. 2742, 2753–54, 125 L.Ed.2d 407 (1993); *see e.g., Lee v. Russell County Bd. of Educ.,* 684 F.2d 769, 771–72 (11th Cir.1982). Absent direct evidence, as here, a plaintiff can establish intentional discrimination under the three-part burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *see also St. Mary's,* 509 U.S. at 518, 113 S.Ct. at 2753.

Under the *McDonnell Douglas* and *Burdine* framework, the plaintiff first must raise an inference of discrimination by establishing a prima facie case. *Batey v. Stone,* 24 F.3d 1330, 1333 (11th Cir.1994) (citation omitted).

---

1. It appears that the plaintiff may have written two letters. The plaintiff has submitted as an exhibit a letter that he wrote to Mr. Barnes and Mr. Moore on June 23, 1993. This letter states as follows: "This is to inform you that I will not be able to work on Sunday's due to extra-curricular activities at my church. I will complete the month of June with the last Sunday work day being June 27, 1993." Pl.'s Br. in Opp. to Summ. J., filed May 1, 1994 (Ex. 2, attached thereto). The court notes that whether the plaintiff wrote one or two letters does not affect the outcome of the court's ruling.

The purpose of the prima facie case is to show an adverse employment decision that resulted from a discriminatory motive. *See Perryman v. Johnson Products Co.*, 698 F.2d 1138, 1143 (11th Cir.1983).

If a plaintiff succeeds in showing a prima facie case of discrimination, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse employment decision. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. The defendant's burden is "exceedingly light," *Perryman*, 698 F.2d at 1142, as it "must merely proffer [nondiscriminatory] reasons, not prove them." *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1019 (11th Cir.1994) (citation omitted) (brackets supplied). Once the defendant satisfies its burden of production, the *McDonnell Douglas* framework, with its presumptions and burdens, drops out of the case, and the only inquiry becomes "whether plaintiff has proven 'that the employer intentionally discriminated against [him].'" *St. Mary's*, 509 U.S. at 511, 113 S.Ct. at 2749 (citation omitted). To prove discrimination after the *McDonnell Douglas* framework drops out, a plaintiff must show that the defendant's proffered reason was a pretext for discrimination, "[b]ut a reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." [2] *Id.* at 515, 113 S.Ct. at 2751–52 (emphasis supplied) (citation omitted).

### I. *Plaintiff's Claim for a Hostile Work Environment based upon Religion Discrimination*

Discriminatory conduct results in a hostile work environment when it is "so severe or pervasive that it create[s] a work environment abusive to employees because of their race, gender, religion, or national origin," thus, offending "Title VII's broad rule of workplace equality." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22–24, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993). To prevail on his hostile work environment claim, the plaintiff must establish that: (1) he belongs to a protected class; (2) he was subjected to unwelcome religious harassment; (3) the harassment was based on religion; and (4) the harassment affected a term, condition or privilege of employment. *Henson v. Dundee*, 682 F.2d 897, 903–05 (11th Cir.1982). Additionally, in order to hold the employer liable on a Title VII hostile work environment claim, the plaintiff must show either that: (1) the harasser is the employer or one of its agents; or (2) the employer knew or should have known of the harassment caused by co-workers, but failed to take corrective action. *Sparks v. Pilot Freight Carriers, Inc.*, 830 F.2d 1554 (11th Cir.1987); *see also Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317 (7th Cir.1992).

To satisfy the fourth element, a plaintiff must show that the harassment was "'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) (citation omitted). In determining this question, courts must look to the totality of circumstances. *Id.* at 22–23, 114 S.Ct. at 371. While a "'mere utterance of an ... epithet which engenders offensive feelings in an employee,' does not sufficiently affect the conditions of employment to implicate Title VII," the environment does not have to be so severe as to cause a "nervous breakdown" or "seriously affect employees' psychological well-being." *Id.* at 20–24, 114 S.Ct. at 370–71 (citations omitted).

The defendant asserts that the plaintiff's hostile work environment claim is based upon a single alleged remark made by Mr. Morgan

---

**2.** *St. Mary's* slightly modified the Title VII disparate treatment framework. Previously, a plaintiff could satisfy his or her Title VII burden of proof "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of belief." *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095; *see Miranda v. B & B Cash Grocery Store,* *Inc.*, 975 F.2d 1518, 1529 (11th Cir.1992) (The plaintiff satisfied her burden by showing that the employer's reasons were unworthy of credence.); *Caban–Wheeler v. Elsea*, 904 F.2d 1549, 1554 (11th Cir.1990) (same). In other words, "the falsity of the employer's explanation [was] *alone enough* to compel judgment for the plaintiff." *St. Mary's*, 509 U.S. at 517, 113 S.Ct. at 2752 (emphasis supplied).

in November 1993.[3] However, the plaintiff now asserts that other incidents are attributable to the defendant and, thus, are sufficient to create a jury issue on his hostile work environment claim. That is, the plaintiff asserts that, after making a request for Wednesday evening and Sunday off, his supervisors harassed him because of his religion. The plaintiff contends, in essence, that even though management initially acquiesced in his request, the plaintiff eventually agreed to work on Sundays, at management's request, but then was unduly criticized for arriving at work at 2:10 p.m. According to the plaintiff, 2:10 p.m. was within the time frame he agreed to come to work on Sunday. The plaintiff further asserts that his alleged cut in hours constitutes actionable harassment.

■ The court finds that the evidence, when viewed in the light most favorable to the plaintiff, does not entitle the plaintiff to a trial on the merits for two reasons. First, the court finds that the plaintiff has failed to timely file a charge of discrimination with the EEOC and, thus, has not satisfied all administrative prerequisites to filing a complaint in federal court. Before a court may hear a Title VII lawsuit, an aggrieved employee, such as Mr. Smith, must (1) file a charge of discrimination with the EEOC within 180 days of the alleged acts of discrimination and then must (2) timely institute a lawsuit within ninety days after receiving a right-to-sue letter. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973). Here, all of the acts of which the plaintiff complains occurred more than 180 days prior to his June 16, 1994 charge of discrimination. The negative comment occurred in November 1993 and the other instances of alleged harassment—being told not to come to work on Sundays and the alleged cut in hours—occurred no later than November 1993.[4]

■ Second, the court finds that the plaintiff's allegations regarding the alleged reduction in his work hours and the purported "negative" age-based remark are not evidence. That is, the court finds inadmissible the plaintiff's assertion, made at his deposition and in his EEOC affidavit, that his hours were reduced after he requested not to work on Wednesday evening and Sunday. The plaintiff must present more than speculation and conclusory allegations. *See Carter v. City of Miami,* 870 F.2d 578, 585 (11th Cir. 1989); *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 597 (11th Cir.1987). Here, the plaintiff has not presented any evidence to support his contention, and the documented evidence (i.e., his payroll records) submitted by the defendant clearly reveals that his hours, in fact, were not reduced.

From September 4, 1993, which is the approximate date that the plaintiff claims his hours were cut, until his termination, the plaintiff worked an average of 17.6 hours per week. This is more than the 12.37 hours-a-week he averaged from January 8, 1993, to September 3, 1993. He also worked more hours per week in the last four pay periods (two months) than he did during any other two-month period in 1993. Moreover, the plaintiff worked more hours per week in the last two pay periods (one month) prior to his termination than he did during any other month in 1993.

---

**3.** The defendant points to the plaintiff's deposition testimony:

Q. Was any manager at store 930 harassing because of your religion?
A. No more than the comment that Willie [Morgan] said that I didn't pay that any mind.
Q. Other than the comment by Willie [Morgan], any other instance of religious harassment?
A. Not that I can recollect.
Pl.s' Dep. at 49, 50.

**4.** The court further notes that the plaintiff can make no case for equitable tolling of the 180–day period. In *Freeman v. CSX Transportation Co.,* 730 F.Supp. 1084, 1086–87 (M.D.Ala.1989), this court explained the equitable tolling concept:

As a general rule, "equitable tolling may be appropriate if (1) the defendant has actively misled the plaintiff, (2) if the plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." (citations omitted).

*Id.* at 1086. Here, the plaintiff has not offered any explanation as to why he should be excused from the consequences of filing his EEOC charge late, much less an explanation sufficient to invoke equitable tolling.

■ Next, while the court recognizes that discriminatory statements made by supervisors can constitute evidence sufficient to defeat a motion for summary judgment, *see Miles v. M.N.C. Corp.*, 750 F.2d 867 (11th Cir.1985), the plaintiff's testimony about the remark made by Mr. Morgan likewise is not admissible evidence. The plaintiff cannot recall what Mr. Morgan said but only offers his opinion and conclusion that the remark related to his religious beliefs and/or practices. The plaintiff is asking the court to assume that the alleged comment was objectively offensive. However, the court at the summary judgment stage and the jury at the trial must know what the comment is in order to determine whether the statement is religiously discriminatory. In other words, "[t]o allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).

■ Hence, the only admissible evidence is the plaintiff's testimony regarding the Mr. Morgan's criticism for the plaintiff's alleged tardy arrival to work on one Sunday. It is well established that isolated and sporadic incidents of harassment are insufficient to create a hostile working environment. *Rogers v. Equal Employment Opportunity Comm'n*, 454 F.2d 234, 237–238 (5th Cir. 1971), *cert. denied*, 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972); *see Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1257 (8th Cir.1981) (explaining that there must be a "steady barrage of opprobrious racial comment"); *see Clayton v. White Hall School Dist.*, 875 F.2d 676, 680 (8th Cir.1989) (affirming summary judgment for the defendant because the plaintiff's "single incident of alleged [race] discrimination" was insufficient to establish a claim for hostile work environment).

For the foregoing reasons, the court finds that the plaintiff has failed to sustain his burden of raising a genuine issue of fact on his hostile work environment claim. Hence, summary judgment is due to be granted in favor of the defendant on this claim.

## II. Plaintiff's Wrongful Termination Claims

Where an employer asserts that an employee's termination was the result of a RIF, an employee establishes a prima facie case of discrimination by showing: "(1) that he [or she] was in a protected group and was adversely affected by an employment decision; (2) that he [or she] was qualified to assume another position at the time of discharge . . .; and (3) evidence by which a fact finder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (citing *Williams v. General Motors Corp.*, 656 F.2d 120, 129 (5th Cir. Unit B 1981)).[5] The plaintiff may satisfy the third element by introducing "direct, circumstantial, or statistical evidence" indicating that the defendant singled him or her out for discharge based upon unlawful discrimination. *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir.), *cert. denied*, 498 U.S. 878, 111 S.Ct. 211, 112 L.Ed.2d 171 (1990).

The defendant concedes that the plaintiff satisfies the first element of the prima facie case for his wrongful termination claims based upon religion and race. The defendant further assumes, *arguendo*, and only for purposes of its motion for summary judgment, that the plaintiff can satisfy the second element because the stockperson position which he occupied was not entirely eliminated. The defendant, however, argues that, regarding the third element, the plaintiff has failed to present any evidence sufficient to withstand summary judgment on either his religion or race termination claim.

### A. Wrongful Termination Claim based upon Religion Discrimination

■ The court finds that the plaintiff has failed to raise a genuine issue of material fact

---

**5.** While liability in *Barnes* was predicated under the Age Discrimination in Employment Act, courts apply the same analysis in determining whether a violation under Title VII has occurred.

*McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, ——, 115 S.Ct. 879, 884, 130 L.Ed.2d 852 (1995).

in regard to his claim that he was terminated based upon his religion. Even assuming *arguendo* that the plaintiff has satisfied the prima facie case, the court finds that the plaintiff has not submitted any evidence that the defendant's legitimate, nondiscriminatory reason for terminating him was pretextual.

The court finds that the defendant has rebutted an inference of discrimination by presenting evidence that it selected the plaintiff for termination based upon his poor work performance. Firing an employee based upon a "company wide [reduction-in-force] and poor work performance" is a legitimate and nondiscriminatory reason sufficient to rebut a prima facie case of discrimination. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1084 n. 5 (11th Cir.1990).

To survive summary judgment, the plaintiff must offer proof that the defendant's stated reason for his termination was false and that the real reason for his termination was based upon religion discrimination. Here, the court finds that the plaintiff simply has not provided any evidence that the performance-based rationale for the plaintiff's termination was pretextual. The plaintiff has not submitted any evidence that any other employee was retained who had as many write-ups and performance ratings as low as he had. In fact, the plaintiff has not filed with the court any of the personnel files of any other stockpersons who worked at Wal–Mart. Without any comparative evidence of similarly-situated white employees, the court has nothing from which it can infer that his termination was related to his status as a black person.[6]

Accordingly, the court finds that the plaintiff has failed to sustain his burden of raising a genuine issue of material fact on his claim that he was wrongfully terminated because of his religion. Hence, summary judgment is due to be granted in favor of the defendant on this claim.

**B. Wrongful Termination Claim based upon Race Discrimination**

■ Although the complaint sets forth a wrongful termination claim based upon race, the plaintiff, at his deposition, testified that his termination claim is based only on religion discrimination, not race discrimination. Pl.'s Dep. at 21–23. Hence, based upon the plaintiff's representation, the court finds that summary judgment is due to be granted in favor of the defendant on this claim.

■ In the alternative, even if the plaintiff now claims that race played a part in his termination, the court finds that summary judgment is due to be granted on this claim, because the plaintiff has failed to offer any evidence of pretext. The plaintiff cannot identify any other employee, black or white, who was retained and had a disciplinary and performance record similar to his. In fact, as previously stated, the plaintiff has no knowledge of any other employee's disciplinary or performance record. It is undisputed that the plaintiff's personnel file included several indicia of poor performance.

Also, any conclusory or speculative allegations that terminated employees in the protected group were more productive than employees outside the protected group who were retained will not constitute evidence of discrimination. *See Earley*, 907 F.2d at 1083–84 (An employer's decision to terminate plaintiffs as part of a RIF because they were the least effective in their department was not rendered pretextual by conclusory allegations that performance evaluations were a cover for age bias.). Moreover, even if the defendant erroneously evaluated the plaintiff's performance, thereby causing him to be terminated, this likewise would not constitute evidence of pretext. *Moore v. Sears, Roebuck & Co.*, 683 F.2d 1321, 1323 n. 4 (11th Cir.1982) (An employer's good faith belief that the plaintiff's work performance was unsatisfactory is not pretext, even if the employer was incorrect.).

Furthermore, the court finds that the fact that the defendant hired two white males some two months after the plaintiff's termination does not create a genuine issue of material fact on the ultimate issue of race discrimination. The evidence reveals that

---

6. Additionally, the court again emphasizes that the plaintiff's testimony regarding the alleged reduction in his work hours and the "negative" comment cannot be considered as evidence in opposition to the defendant's motion for summary judgment on this claim.

the plaintiff was eligible to apply for these positions but did not do so. Moreover, the fact that an overwhelming majority of the stockperson positions at Wal–Mart store 930 were held by black employees weakens the plaintiff's contention that the hiring of the two white employees shows race discrimination. Accordingly, the court finds that summary judgment is due to be granted in favor of the defendant on the plaintiff's wrongful termination claim based upon race.

### ORDER

Accordingly, and for the foregoing reasons, the court finds that defendant Wal–Mart Stores, Inc.'s motion for summary judgment is due to be granted. A judgment in accordance with this memorandum opinion will be entered separately.