959 F.Supp. 1123 (1996)
Kathy B. COLLINS, Plaintiff,
v.
MALLINCKRODT CHEMICAL, INC., Defendant.
No. 4:95CV669 JCH.
United States District Court, E.D. Missouri, Eastern Division.
September 9, 1996.
Opinion Granting Reconsideration in Part September 16, 1996.
*1124 Gail A. Wechsler, Kenneth M. Chackes, Van Amburg and Chackes, St. Louis, MO, for plaintiff.
Patricia M. McFall, Associate, Geoffrey M. Gilbert, Jr., McMahon and Berger, St. Louis, MO, John F. Kuenstler, Franczek and Sullivan, Chicago, IL, for defendant.

MEMORANDUM AND ORDER
HAMILTON, Chief Judge.
This matter is before the Court on Defendant's Motion for Summary Judgment and Plaintiff's Motion to Compel Discovery and for Sanctions. The motions have been fully briefed by both parties.
Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended by the Civil Rights Act of 1991, and the Missouri Human Rights Act, Mo.Rev.Stat. §§ 213.010 et seq. Plaintiff was employed by Defendant for approximately twenty years. After filing a charge of discrimination with the EEOC and the Missouri Commission on Human Rights alleging that Defendant discriminated against her on the basis of her sex and that Defendant retaliated against her for complaining about the discrimination, Plaintiff received a notice of right to sue. Plaintiff alleges that as a result of Defendant's discriminatory practices, she was constructively discharged.
In 1995 Plaintiff commenced this cause of action alleging hostile environment sexual harassment, retaliation, and constructive discharge. Plaintiff seeks legal and injunctive relief and punitive damages.

*1125 I. MOTION FOR SUMMARY JUDGMENT

A. Standard
The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.
A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323, 106 S.Ct. at 2552-53. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed.R.Civ.P. 56(e); Anderson, 477 U.S. at 247, 106 S.Ct. at 2510. The nonmoving party may not rest upon mere allegations or denials of her pleading. Anderson, 477 U.S. at 256, 106 S.Ct. at 2514.
In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in her favor. Id. at 255, 106 S.Ct. at 2513. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Id. at 249, 106 S.Ct. at 2510-11.

B. Facts
Viewing the facts in the light most favorable to Plaintiff, the Court finds the following for purposes of this motion.
Plaintiff began working at Defendant Mallinckrodt Chemical, Inc. in September 1972 and was employed there until August 1993. (Complaint, para.10). From April 1991 to August 1993, Plaintiff's position was a porter in Building 250, Special Products, Manufacturing at Defendant's St. Louis plant. (Plaintiffs Memorandum in Opposition Exhibit A, p. 3). In September 1991, about five months after starting as Porter, Plaintiff received a letter of commendation from her Supervisor Mark Schroeder. (Schroeder Deposition, Exhibit 2).
Plaintiff worked on a straight day shift while she was a Porter, as did her immediate foreman Raymond Rucker. (Collins Affidavit; Rucker Deposition, pp. 5-6). Three other employees also worked the straight day shift under Mr. Rucker. (Rucker Depo., p. 7). Frances Smith, a production operator, was one of the three straight day shift employees. (Id.). The other two employees on the straight day shift were men. (Id.). Other employees worked on the day shift about one week per month. (Tuhill Depo., p. 7; Collins Affidavit).
Plaintiff, as Porter, was required to clean the break room every day. (Collins Affidavit). While in the break room, Plaintiff frequently heard Mr. Rucker and Ms. Smith, who spent a considerable amount of time together in the break room, joke about women's hormones, women's bodies, and women's sex lives. (Collins Deposition Vol. I, pp. 193-94; Collins Affidavit; Plaintiff's Deposition Exhibit 16). Plaintiff was subjected to these comments each day for about twenty minutes. (Collins Depo. Vol. I, p. 195).
Plaintiff did not complain about the comments until other employees approached her, as a union representative, to complain about Ms. Smith and Mr. Rucker's vulgar language. (Collins Depo. Vol. I, pp. 104-06). In addition to the daily sexual comments, Ms. Smith also called Plaintiff a "fat ass bitch," which Mr. Rucker, Plaintiff's foreman, laughed at. (Collins Depo. Bol. I, p. 130; Collins Depo. Vol. II, pp. 133, 136; Smith Depo., p. 56).
Late in 1991, Plaintiff first brought Ms. Smith and Mr. Rucker's break room behavior to the attention of Director of Manufacturing Jon Koester. (Collins Depo. Vol. I, p. 111; Plaintiff's Deposition Exhibit 16; O'Connor *1126 Deposition, Exhibit 3, p. 15). Several meetings were held between Mr. Koester and employees of Building 250 about the sexual comments made by Ms. Smith and Mr. Rucker. (Collins Depo. Vol. I, pp. 111-12; Riebling Depo., pp. 18-19). The last of these meetings was held on January 16, 1992. (Johnson Depo., Exhibit 1, p. 1; Collins Depo. Vol. I, p. 111).
From January 22, 1992 through May 1992, Plaintiff received six formal disciplinary actions. Prior to this period, Plaintiff had received five disciplinary actions in nineteen years.[1] (Collins Affidavit; Memo. in Opp. Exhibit A). The first time Plaintiff was disciplined while working as a Porter in Building 20 was on January 22, 1992, when she received a written warning for a security violation. (Plaintiff's Deposition Exhibit 6; Holmdahl Depo., Exhibit 3). Defendant is required to provide all Building 250 employees with a security orientation when they first begin working in Building 250. (O'Connor Depo., pp. 6-7, Exhibit 1; Schroeder Depo., pp. 37-38). Plaintiff did not receive a security orientation when she began working in Building 250. (Collins Depo. Vol. I, pp. 153-54).
Plaintiff's next discipline occurred on February 24, 1992, as a result of another security violation, and she was laid off for three days. (Plaintiffs Deposition Exhibit 8; Holmdahl Depo., Exhibit 4). After this discipline, Building 250's management wrote a clarification of the security policy Plaintiff had been disciplined for violating. (Koester Depo., p. 60; Schroeder Depo., pp. 43-45).
Plaintiff's third and fourth disciplines while working in Building 250 stemmed from the same incident, in which Plaintiff taped open a security door. Plaintiff admitted committing this security violation. (Collins Depo. Vol. I, p. 167). On March 24, 1992, Plaintiff was suspended pending investigation for this violation that had been reported by Frances Smith. (Holmdahl Depo., Exh. 1; Galvin Depo., Exh. 4). Plaintiff returned to work after three days, then received a written warning in early April for the same door-taping incident. (Galvin Depo., Exh. 4). When asked about reporting Plaintiff for this incident, Ms. Smith admitted that she reported Plaintiff because Plaintiff had made a sexual harassment complaint about Ms. Smith, (Smith Depo., pp. 44-46). Ms. Smith also admitted that she had seen violations of that same security measure before. (Holmdahl Depo., Exh. 1 pp. 8, 10).
Plaintiff's fifth disciplinary action occurred after the written warning she received for the door taping incident, when she returned from her suspension. Plaintiff noticed that the chemists in the lab area of Building 250 were locking their doors during lunch time, keeping Plaintiff from cleaning their work areas. (Collins Affidavit; Collins Depo. Vol. II, pp. 33-36). Plaintiff then stopped working overtime, afraid she would be accused of stealing drugs. (Collins Affidavit). In May of 1992, Plaintiff received a written warning for poor performance. (Plaintiff's Deposition Exhibit 11; Holmdahl Depo. Exh. 5). One of the complaints on which the performance warning was based originated from an incident that occurred while Plaintiff was on vacation, and another involved equipment that had been broken before Plaintiff became the Porter in Building 250. (Collins Depo. Vol. I, pp. 177-79).
Plaintiff's final disciplinary action occurred on June 8, 1992, when Plaintiff received a memorandum from Mr. Schroeder regarding her relationship with Frances Smith. (Schroeder Depo. Exh. 3). Plaintiff had reported verbal attacks by Mr. Rucker and physical attacks by Ms. Smith, but no action was taken. (Collins Depo. Vol. II, p. 136; Riebling Depo., pp. 41-44; Plaintiff's Answers to Interrogatories Nos. 10, 14, 14B; Galvin Depo., pp. 73-74). On or about June 8, 1992, Ms. Smith reported that Plaintiff had physically attacked her, and Mr. Schroeder then sent out a memorandum to both Ms. Smith and Plaintiff stating that if such incidents occurred in the future, both parties would be disciplined as if both sides of the incident were true. (Schroeder Depo., Exh. 3). Yet, when an incident report was filed by Plaintiff on July 17, 1992, stating that Ms. Smith had banged a door into her head, Mr. Rucker concluded that Ms. Smith had not *1127 attacked Plaintiff, and no discipline was imposed on anyone. (Schroeder Depo. Exh. 3; Rucker Depo., pp. 112-14, Exh. 5).
The last two disciplinary actions occurred after Plaintiff's formal sexual harassment charge against Rucker was forwarded from her union representative to Defendant's Human Resources Department. (Collins Depo. Bol. I, pp. 103-04; Barrows Depo., pp. 15-16). Upon receipt of the formal charge, Defendant began investigating the allegations of sexual harassment. (Holmdahl Depo., p. 65; Collins Depo. Vol. I, p. 126; Collins Depo. Vol. II, p. 135). Defendant interviewed operators in Building 250 regarding the allegations of sexual harassment. (Jonathan Hale Depo., p. 10). Jonathan Hale, Defendant's Human Resources Manager conducted the interviews accompanied by Defendant's outside counsel Patricia McFall and a union representative. (Hale Depo., pp. 8-10). Incidents of personal animosity were described by the former Porter Mary McFarland, and John Bateman corroborated Plaintiff's allegations of sexual harassment, although no one was able to corroborate Plaintiff's major allegations contained in her charge of sexual harassment. (Hale Depo., pp. 23-24, 62; Holmdahl Depo., p. 69). Mr. Hale determined that Plaintiff's charges could not be corroborated, and, after contacting the union, he closed the investigation, and in contrast to former incidents involving complaints of sexual harassment, he did not warn Mr. Rucker that his actions had been perceived as sexual harassment. (Hale Depo., pp. 42, 47-49, 54, 60-61, Exh. 4). Mr. Hale did not separately investigate Plaintiff's claims of retaliation. (Hale Depo., pp. 76-77).
Near the beginning of June 1992, Plaintiff began counseling after experiencing nervousness, anxiety attacks, intense nausea and cramps, frequent headaches and dizziness, insomnia, loss of concentration, fear, depression, and lack of sexual drive. (Collins Affidavit; Plaintiff's Answer to Interrogatory No. 11). In August of that year, she began a medical leave of absence. (Collins Depo. Vol. I, p. 185). She attempted to return to work on January 21, 1993, but became physically ill and went home. (Fuller Depo., pp. 9-10, 16-17; Collins Affidavit).
Plaintiff's psychiatrist recommended that she be transferred to another department, and although Plaintiff attempted to bid into another position, her bid was not received, and she did not resubmit her bid. (Plaintiff's Deposition Exhibit 28; Collins Affidavit; Memo. in Opp. Exh. B; Collins Depo. Vol. II, p. 108).
Plaintiff attempted to return to work again in April 1993 but was unable to stay due to anxiety attacks. (Collins Depo. Vol. II, pp. 123-24). She was diagnosed with job-related post traumatic stress disorder and depression and received continued treatment from a psychiatrist and a psychologist. (Memo. in Opp. Exh. D and Exh. E). On August 27, 1993, Plaintiff submitted a letter of resignation to Gerald Holmdahl stating that she was resigning due to the hostile work environment and retaliation she had experienced. (Collins Depo. Vol. II, p. 91; Plaintiff's Depo. Exh. 26). Defendant then recorded Plaintiff's termination as voluntary and contested her application for unemployment compensation. (Fuller Depo., pp. 66-68; Barrows Depo., p. 53).
On November 20, 1992, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC") and the Missouri Commission on Human Rights asserting sexual harassment and retaliation. (Plaintiff's Deposition Exhibit 13). Plaintiff later filed an amended charge adding a constructive discharge claim. (Plaintiff's Deposition Exhibit 21). The EEOC initially determined that there was no Title VII violation, but Plaintiff requested a reconsideration of this determination. (Plaintiff's Deposition Exhibits 17, 19). The EEOC granted Plaintiff's request and issued a right-to-sue letter on January 9, 1995. (Plaintiff's Deposition Exhibit 20; Memo. in Opp. Exh. L). Plaintiff filed this action on April 14, 1995.

C. Analysis

1. Hostile Environment Sexual Harassment
Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., was enacted as "part of a wider statutory scheme to protect *1128 employees in the workplace nationwide." McKennon v. Nashville Banner Publishing Co., 513 U.S. 352, ___, 115 S.Ct. 879, 884, 130 L.Ed.2d 852 (1995). Its purpose is to eliminate discrimination in the workplace. Id. (citing Oscar Mayer & Co. v. Evans, 441 U.S. 750, 756, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979)). Title VII prohibits an employer from discriminating "against any individual with respect to [her] compensation, terms, condition, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "Discrimination based on sex which has created a hostile or abusive working environment violates Title VII."[2]Quick v. Donaldson Company, 90 F.3d 1372, 1377 (8th Cir.1996) (citing Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 66, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986)).
To state a claim of hostile environment sexual harassment, Plaintiff must show that:
(1) she belongs to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) [Defendant] knew or should have known of the harassment and failed to take proper remedial action.
Kopp v. Samaritan Health System, Inc., 13 F.3d 264, 269 (8th Cir.1993) (quoting Burns v. McGregor Electronic Indus., Inc., 955 F.2d 559, 564 (8th Cir.1992)). A violation of Title VII does not occur unless the behavior at issue is "severe or pervasive enough to create an objectively hostile or abusive work environmentan environment that a reasonable person would find hostile or abusive." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993).
Plaintiff must first show that she is a member of a protected class. In order to make such a showing Plaintiff must show that she is a man or a woman. Quick, 90 F.3d at 1377. "The term `sex' as used in Title VII has ... been interpreted to mean either `man' or `woman,' and to bar workplace sexual harassment against women because they are women and against men because they are men." Id. Plaintiff, as a woman, therefore, has met the first element of her prima facie case.
Second, Plaintiff must show that she "was subject to `unwelcome sexual harassment.'" Id. at 1377 (citation omitted). Accordingly, Plaintiff must show that she experienced sexual harassment and that it was unwelcome.
"The type of conduct that may constitute sexual harassment includes sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature. The harassment need not be explicitly sexual in nature, though, nor have explicit sexual overtones." Id. (citations omitted). Sexual harassment may be evidenced by acts of physical aggression, violence, or verbal abuse. Id.
In the instant case, Plaintiff has asserted that she was exposed to physical assaults and verbal abuse by her co-worker Ms. Frances Smith, and that her foreman Mr. Ray Rucker apparently condoned that conduct by laughing at one of her remarks aimed at Plaintiff. Additionally, Plaintiff indicated by her complaints to Defendant that such conduct was unwelcome. See id. Plaintiff has, therefore, raised a factual dispute as to the second prong of her prima facie case.
The third element Plaintiff must show is that the harassment complained of was based upon sex. "[T]he key inquiry is whether `members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'" Id. (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 25, 114 S.Ct. 367, 372, 126 L.Ed.2d 295 (1993) (Ginsburg, J. concurring)). Plaintiff must show that the conduct was gender-based. Id. at 1378-79.
Plaintiff, here, has demonstrated a factual dispute as to whether the conduct she complained of was gender-based. Much of the conduct she complained of appears not to *1129 have been directed at her, but she was exposed to it on a regular basis. Plaintiff has presented facts demonstrating that Mr. Rucker favored Ms. Smith, was hostile to Plaintiff, and allowed Ms. Smith, an employee he supervised, to attack Plaintiff verbally. Moreover, the verbal and physical abuse allegedly directed at Plaintiff by Ms. Smith was also directed to the former Porter Mary McFarland, the only other woman directly under Mr. Rucker's supervision.
"The fact that [Plaintiff] might have been unpopular could not justify conduct that otherwise violated Title VII." Quick, 90 F.3d at 1379. Ms. Smith's alleged physical assaults on Plaintiff and calling her a "bitch" may have been motivated by Plaintiff's gender. Therefore, the fact that she may not have liked Plaintiff for personal reasons is irrelevant. Accordingly, a dispute as to a material fact exists, making summary judgment inappropriate.
Fourth, Plaintiff must demonstrate that the alleged harassment affected a term, condition, or privilege of employment. "This factor means that the workplace is permeated with `discriminatory intimidation, ridicule and insult' that is `sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Quick, 90 F.3d at 1378 (quoting Harris, 510 U.S. 17 at 21, 114 S.Ct. at 370). Considerations in determining whether an environment is hostile or abusive include:
the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.
Harris, 510 U.S. at 23, 114 S.Ct. at 371. "A discriminatorily abusive work environment may exist where the harassment caused economic injury, affected the employee's psychological well-being, detracted from job performance, discouraged an employee from remaining on the job, or kept the employee from advancing in ... her career." Quick, 90 F.3d at 1378.
"Although no single factor is required to state a claim for sexual harassment, each may be relevant in deciding whether a hostile environment existed...." Quick v. Donaldson, 90 F.3d 1372, 1379 (8th Cir.1996). Examining Plaintiff's claims in view of the factors set out in Harris and Quick, the Court finds that, Plaintiff has shown that a dispute as to a material fact exists on the fourth prong of her prima facie case.
The final element in determining whether Plaintiff has stated a claim for hostile environment sexual harassment is whether "the employer failed properly to remedy the harassment it knew or should have known about." Id. at 1378. In the instant case, Defendant was made aware of the harassment by Plaintiff's complaints. Plaintiff's formal charge was investigated by Defendant shortly after its receipt, and Defendant interviewed other employees in Building 250, including Mr. Rucker and Ms. Smith. Yet, Defendant never initiated any disciplinary action against them, nor did Defendant require them to learn what types of conduct are often considered sexual harassment.
The Court finds that a factual dispute exists as to whether Defendant's investigation meets the final requirement of immediate and appropriate action. Defendant took Plaintiff's charges seriously and began an investigation into them. Defendant interviewed most of the employees working in Building 250, asking them to substantiate Plaintiff's assertions of sexual harassment. Defendant found that another employee indicated that sexual harassment and sexual tension existed. Although it appears that Defendant acted within a reasonable time frame, Defendant was also required to take appropriate action. Other than the investigation, Defendant took no action. A dispute of material fact exists on the fifth element of Plaintiff's prima facie case.
Based on the foregoing analysis of the factors required to state a claim for hostile environment sexual harassment, the Court finds that a factual dispute exists, and summary judgment is inappropriate.

2. Retaliation
A claim of unlawful retaliation does not depend on the merits of the underlying claim of discrimination. Cobb v. Anheuser *1130 Busch, Inc., 793 F.Supp. 1457, 1489 (E.D.Mo. 1990) (citing Davis v. State University of New York, 802 F.2d 638 (2d Cir.1986)). "Furthermore, Title VII's prohibition against retaliatory discrimination protects activities ranging from the filing of a formal complaint to expressing a belief that the employer has engaged in discriminatory practices." Id. at 1489-90. To establish a prima facie case of retaliation, Plaintiff must show that: "1) she complained of discrimination; 2) defendant took adverse action against her; and 3) the adverse action was causally linked to the complaint of discrimination." Marzec v. Marsh, 990 F.2d 393, 396 (8th Cir.1993) (citing Martin v. Local 1513 & District 118 of International Ass'n of Machinists and Aerospace Workers, 859 F.2d 581, 585 (8th Cir. 1988) (other citations omitted)). A Plaintiff may establish the third element of a claim for unlawful retaliation "by proof that the [adverse action] followed the protected activity so closely in time as to justify an inference of retaliatory motive." Hargens v. United States Department of Agriculture, 865 F.Supp. 1314, 1329-30 (N.D.Iowa, 1994) (emphasis added) (citing Schweiss v. Chrysler Motors Corp., 987 F.2d 548, 549 (8th Cir. 1993) (citation omitted)). See also Rath v. Selection Research, Inc., 978 F.2d 1087, 1090 (8th Cir.1992) (stating standard, but expressing doubt that discharge six months after alleged whistle-blowing met causal connection requirement); Couty v. Dole, 886 F.2d 147, 148 (8th Cir.1989) (discharge thirty days after protected activity was sufficient temporal proximity for causal connection); Keys v. Lutheran Family and Children's Services of Missouri, 668 F.2d 356, 358 (8th Cir.1981) (less than two months sufficient proximity for causal connection); Womack v. Munson, 619 F.2d 1292, 1296 (8th Cir.1980), cert. denied, 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981) (twenty three days sufficient proximity for causal connection).
The Plaintiff ultimately must show that "the employer's retaliatory motive was the `but for' cause of the adverse employment decision." Cobb v. Anheuser Busch, Inc., 793 F.Supp. 1457, 1489 (E.D.Mo.1990). "Classic examples of adverse employment actions under Title VII include an employer's discharge, failure to promote, or a failure to hire an employee because of a statutorily protected activity in which the employee has engaged." Callanan, 903 F.Supp. at 1300.
Plaintiff has shown that she complained of sexual harassment, and therefore has established the first element of the prima facie case. As for the second element of the prima facie case, Defendant disciplined Plaintiff several times after receiving her complaint, and Plaintiff had received few disciplinary actions in the twenty years she had worked for Defendant. Although these actions did not lead to a lost promotion or involuntary termination, they are adverse employment actions in and of themselves.
Plaintiff also has shown that Ms. Smith's motive for reporting one of Plaintiff's violations was based on Plaintiff's filing of the sexual harassment complaint with Defendant. Plaintiff, however, has not shown that Defendant disciplined Plaintiff in response to her complaints of sexual harassment. Rather, Plaintiff was disciplined for legitimate security violations and poor job performance, and when Plaintiff and Smith accused each other of physical assaults both of them received the same letter about their conduct, and the letter was placed in both employees' files. The only evidence of retaliatory intent was Ms. Smith's statement that she reported Plaintiff for taping open a security door because Plaintiff had filed a sexual harassment complaint against her, but Plaintiff admitted to taping open the door. Defendant's discipline of her for that violation was, therefore, legitimate, and Plaintiff has not provided evidence that Defendant's motive was retaliatory. Although Plaintiff asserts that she was not given the security orientation upon starting work in Building 250 and therefore was unaware of the security requirements in Building 250, Plaintiff had received security information after being disciplined for a prior security violation. Additionally, Plaintiff successfully had her suspension reduced after filing a grievance through her union.
Although the alleged retaliatory actions occurred in close proximity to Plaintiff's complaints of harassment, such proximity in time establishes only an inference of discrimination. Because Defendant legitimately disciplined *1131 Plaintiff for actions Plaintiff admits she committed, that inference has been rebutted, and Plaintiff has not shown that her complaints were the cause of the discipline. Plaintiff has shown only that Ms. Smith's motive for reporting her was retaliatory, she has not shown that Defendant's motive for disciplining her was to retaliate against her for filing complaints of sexual harassment. Therefore Plaintiff has not demonstrated that Defendant's "retaliatory motive was the `but for' cause of the adverse employment decision." Cobb, 793 F.Supp. at 1489. Plaintiff's claim that Defendant retaliated against her for filing a charge of sexual harassment therefore fails.

3. Constructive Discharge
To establish a prima facie case of discriminatory discharge, Plaintiff must show that (1) she is a member of a protected class, (2) she was capable of performing the job, and (3) she was discharged. Tidwell v. Meyer's Bakeries, Inc., 93 F.3d 490, 494 (8th Cir.1996). The first two elements are not contested. Therefore, Plaintiff has met them. Because Plaintiff submitted a letter of resignation, however, she must show that she was forced to leave due to a constructive discharge. Id.
"A constructive discharge exists when an employer deliberately renders the employee's working conditions intolerable and thus forces [her] to quit [her] job." Johnson v. Bunny Bread Co. 646 F.2d 1250, 1256 (8th Cir.1981) (quoting Slotkin v. Human Development Corp. 454 F.Supp. 250, 255 (E.D.Mo.1978)). The employer's actions must have been taken with the intention of forcing the employee to resign her position. Id. Whether an employee's working conditions are intolerable is assessed according to a reasonable person standard. Id. Additionally, "[t]he plaintiff can satisfy the intent requirement by demonstrating that [she] quit as a reasonably foreseeable consequence of the employer's discriminatory actions." Tidwell, 93 F.3d at 494 (citing Hukkanen v. International Union of Operating Engineers, 3 F.3d 281, 285 (8th Cir.1993)).
Plaintiff argues that she resigned after enduring a series of cumulative intolerable incidents including verbal and physical harassment by her co-worker Ms. Smith, several disciplinary actions within a short period of time, and being yelled at and threatened with lawsuits by Mr. Rucker, her foreman. With the exception of the disciplinary actions, which the Court determined were warranted based on admitted security violations, the Court takes as true the occurrences complained of by Plaintiff.
The Court must determine whether Plaintiff's resignation was a reasonably foreseeable consequence of Defendant's actions. Plaintiff asserts that she was verbally harassed by Ms. Smith on several occasions and that Ms. Smith physically assaulted Plaintiff on three occasions. Also, Mr. Rucker's treatment of Plaintiff indicated she found Mr. Rucker's treatment of her to be unpleasant, and his conduct may have been discriminatory. A factual dispute exists as to whether Plaintiff's working conditions were objectively intolerable, forcing her to quit. Therefore, Plaintiff's claim for constructive discharge survives summary judgment.

II. Plaintiff's Motion to Compel and for Sanctions
Next the Court turns to Plaintiff's Motion to Compel Discovery and for Sanctions. Plaintiff has complied with Local Rule 3.04 requiring counsel to attempt to resolve discovery disputes before filing a motion to compel.
Plaintiff's motion seeks several documents, requests for admissions, and answers to questions propounded at Jonathan Hale's deposition. Most of the discovery sought pertains to documents generated during Defendant's investigation of Plaintiff's sexual harassment complaints. Defendant asserts in its Memorandum in Opposition to Plaintiff's Motion that Defendant has provided the requested documents to Plaintiff and that Plaintiff's motion to compel is therefore moot.
Plaintiff's motion for sanctions, however, is not moot. This is the second Motion to Compel Plaintiff has filed in this case. After the first motion to compel was filed, Defense counsel also asserted that the motion was moot because it had provided the *1132 documents. Defense counsel's conduct shows a pattern of refusing discovery requests and forcing Plaintiff to file a motion to compel in order to obtain legitimate discovery. Additionally, Plaintiff asserts that Defense counsel repeatedly denied the existence of any documents related to its investigation of Plaintiff's sexual harassment complaints. Then, in taking Jonathan Hale's deposition, Plaintiff learned that at least one person had taken notes at the interviews of other Building 250 employees. Defense counsel's repeated denial that any notes were taken is exacerbated by the fact that one of the individual's taking notes was Patricia McFall, defense counsel in the instant case.
The Federal Rules of Civil Procedure provide that if a motion to compel is granted or if the
requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party ... whose conduct necessitated the motion or the ... attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds
that a good faith effort was not made to obtain the discovery without court intervention or other circumstances exist that make an award of expenses unjust. Fed.R.Civ.P. 37(a)(4)(A).
Because Defense counsel waited to provide the requested discovery until after Plaintiff filed a Motion to Compel, and because Defense counsel repeatedly misrepresented to Plaintiff that no notes were taken during the investigation of Plaintiff's complaints, when in fact notes were taken, the Court will order Defense counsel to pay Plaintiff's reasonable expenses, including attorney's fees, incurred in preparing and filing Plaintiff's Motion to Compel and for Sanctions.
Accordingly,
IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment [docket #36] is GRANTED in part and DENIED in part, and Plaintiff's claim of retaliation is dismissed with prejudice.
IT IS FURTHER ORDERED that Plaintiff's Motion to Compel Discovery and for Sanctions [docket #19] is DENIED as moot in part and GRANTED in part.
IT IS FURTHER ORDERED that Defendant and Defense counsel pay Plaintiff's reasonable expenses, including attorney's fees, incurred in making Plaintiff's Motion to Compel and for Sanctions.
An appropriate Judgment will accompany this Memorandum and Order.

JUDGMENT
In accordance with the Memorandum and Order entered this day and incorporated herein,
IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Defendant shall have judgment against Plaintiff on Plaintiff's claim of retaliation, and Plaintiff's claim of retaliation is dismissed with prejudice.

MEMORANDUM AND ORDER ON MOTIONS
This matter is before the Court on Defendant's Motion for Reconsideration or, in the Alternative, to Certify for Interlocutory Appeal, Plaintiff's Motion for Reconsideration, and, in the Alternative, for Certification under Rule 54(b), and Plaintiff's Motion to Deny as Moot (1) Defendant's Motion for Reconsideration or, in the Alternative, to Certify for Interlocutory Appeal, and (2) Plaintiff's Alternative Motion for Certification under Rule 54(b).
On September 12, 1996, Defendant's Offer of Judgment and Plaintiff's Acceptance of Offer of Judgment were filed with the Court, settling Plaintiff's claims of hostile environment sexual harassment and constructive discharge and removing them from this Court's purview. Defendant's Motion for Reconsideration or, in the Alternative, to Certify for Interlocutory Appeal, because it addresses only the hostile environment sexual harassment and constructive discharge claims, is moot. Additionally, Plaintiff has requested that the Court deny as moot her motion in the alternative for Certification under Rule 54(b) addressed to the Court's ruling on her *1133 retaliation claim. The Court will grant this motion and deny as moot her Motion in the Alternative, for Certification under Rule 54(b). Remaining before the Court is Plaintiff's Motion for Reconsideration of its grant of summary judgment on Plaintiff's claim of Retaliation. Defendant has responded to this.
Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended by the Civil Rights Act of 1991, and the Missouri Human Rights Act, Mo.Rev.Stat. §§ 213.010 et seq. Plaintiff was employed by Defendant for approximately twenty years. In 1995 Plaintiff commenced this cause of action alleging hostile environment sexual harassment, retaliation, and constructive discharge, and seeking legal and injunctive relief and punitive damages. Defendant filed a motion for summary judgment on Plaintiff's claims, and on September 9, 1996, the Court denied summary judgment on Plaintiff's claims of hostile environment sexual harassment and constructive discharge and granted summary judgment on Plaintiff's claim of retaliation.
In the instant motion Plaintiff requests the Court to reconsider its ruling on her retaliation claim. As grounds for reconsideration, Plaintiff asserts that (1) the Court overlooked Plaintiff's hostile work environment evidence as part of her retaliation claim, (2) the Court did not consider Plaintiff's assertion that Defendant's stated reasons for disciplining Plaintiff were pretextual, and (3) Plaintiff has additional evidence to submit as proof of pretext.
Plaintiff asserts that her claim of retaliation involved more than the disciplinary actions imposed on her by Defendant.
Rather, she details a course of conduct occurring over a period of months whereby she was subjected to numerous disciplinary actions, verbal and physical attacks by both alleged harassers, along with increased job scrutiny, all after complaining about sexual harassment. Plaintiff's retaliation claim is in the nature of a hostile environment harassment claim.
Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, at 30-32. Plaintiff, however, has cited the Court to no law that creates a retaliation claim in the nature of a hostile environment harassment claim.
To establish a prima facie case of retaliation, Plaintiff must show that: "1) she complained of discrimination; 2) defendant took adverse action against her; and 3) the adverse action was causally linked to the complaint of discrimination." Marzec v. Marsh, 990 F.2d 393, 396 (8th Cir.1993) (citing Martin v. Local 1513 & District 118 of International Ass'n of Machinists and Aerospace Workers, 859 F.2d 581, 585 (8th Cir.1988) (other citations omitted)). A Plaintiff may establish the third element of a claim for unlawful retaliation "by proof that the [adverse action] followed the protected activity so closely in time as to justify an inference of retaliatory motive." Hargens v. United States Department of Agriculture, 865 F.Supp. 1314, 1329-30 (N.D.Iowa, 1994) (emphasis added) (citing Schweiss v. Chrysler Motors Corp., 987 F.2d 548, 549 (8th Cir. 1993) (citation omitted)). See also Rath v. Selection Research, Inc., 978 F.2d 1087, 1090 (8th Cir.1992) (stating standard, but expressing doubt that discharge six months after alleged whistle-blowing met causal connection requirement); Couty v. Dole, 886 F.2d 147, 148 (8th Cir.1989) (discharge thirty days after protected activity was sufficient temporal proximity for causal connection); Keys v. Lutheran Family and Children's Services of Missouri, 668 F.2d 356, 358 (8th Cir.1981) (less than two months sufficient proximity for causal connection); Womack v. Munson, 619 F.2d 1292, 1296 (8th Cir.1980), cert. denied, 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981) (twenty three days sufficient proximity for causal connection).
The Plaintiff ultimately must show that "the employer's retaliatory motive was the `but for' cause of the adverse employment decision." Cobb v. Anheuser Busch, Inc., 793 F.Supp. 1457, 1489 (E.D.Mo.1990). "Classic examples of adverse employment actions under Title VII include an employer's discharge, failure to promote, or a failure to hire an employee because of a statutorily protected activity in which the employee has engaged." Callanan, 903 F.Supp. at 1300.
*1134 The Court is not convinced that the asserted ongoing harassment of Plaintiff by Mr. Rucker and Ms. Smith can be considered both the underlying harassment and the retaliation for Plaintiff's complaints of sexual harassment. A claim of retaliation requires that a negative employment action be taken against Plaintiff because she complained that she was being subjected to hostile environment sexual harassment. Plaintiff has cited no legal authority, however, to demonstrate that a retaliation claim "in the nature of a hostile environment harassment claim" can be brought. The Court declines to view such evidence in the context of Plaintiff's retaliation claim.
On the other hand, Plaintiff's assertions that after she complained of sexual harassment, Defendant subjected her to numerous disciplinary actions and increased job scrutiny potentially state a claim that Defendant took negative employment actions against Plaintiff in an effort to retaliate against her. Plaintiff has provided some evidence that the disciplinary actions to which Defendant subjected her were in retaliation for her charges of sexual harassment. Following her complaints of sexual harassment and in a relatively short period of time, Defendant disciplined Plaintiff on six separate occasions. Three of these were alleged security violations by Plaintiff. First, Plaintiff was disciplined for wearing her brown coveralls outside of the building. Plaintiff admitted to wearing her coveralls outside the building but stated that she had been allowed to do so for several months before being disciplined. (Deposition of Kathy Collins Vol. I, pp. 147-48). Second, Plaintiff received a discipline in February for signing out of one section of Building 250 to go to another section of Building 250 and the cafeteria. Plaintiff was disciplined for this activity as violating the security procedure prohibiting signing out to multiple destinations. Plaintiff was laid off for three days for this violation.
Plaintiff's third and fourth disciplines were for taping open the door to the women's locker room. Upon being informed that Plaintiff had taped open the door, Defendant suspended her pending investigation. Plaintiff remained out for three days. After she returned to work she also received a written warning for that activity. Plaintiff admitted to taping the door open, but claims that others routinely rigged the doors so they would stay open, even though those actions violated security procedures. Additionally, Plaintiff has brought forth new evidence consisting of John Bateman's affidavit stating that he saw Plaintiff's supervisor Ray Rucker use a coat hanger to keep the men's locker room door open during the same year he disciplined Plaintiff for taping open the door. Plaintiff, thus, has brought forward evidence that Defendant's stated reasons for disciplining her were pretextual.
For her fifth discipline, Plaintiff received a job performance warning for problems that arose when she was not there. Finally, as Plaintiff's sixth discipline, both she and Ms. Smith received reprimands for an alleged altercation between them. The warning indicated that if further problems arose between them, each would be disciplined as though what the other said were true.
In light of Plaintiff's claims that she received these disciplines after filing charges of sexual harassment, and that Defendant had not disciplined her for similar actions before this period, Plaintiff has raised an issue of material fact as to whether or not such actions constituted retaliation. In addition, Plaintiff has stated that other employees were not disciplined for the same activities.
Plaintiff has also indicated that she was subjected to increased job scrutiny in the form of her supervisor watching her sign her times in and out, searching the building to determine her whereabouts, and waiting by the front door for her to return from lunch. Increased job scrutiny can be evidence of retaliation. See Davis v. Fleming Companies, 55 F.3d 1369, 1373-74 (8th Cir. 1995). Therefore, Plaintiff has presented a material dispute of fact regarding her retaliation claim. The Court will grant Plaintiff's Motion to Reconsider.
Accordingly,
IT IS HEREBY ORDERED that Defendant's Motion for Reconsideration or, in the *1135 Alternative, to Certify for Interlocutory Appeal [docket #84] is DENIED as moot.
IT IS FURTHER ORDERED that Plaintiff's Motion for Reconsideration, and, in the Alternative, for Certification under Rule 54(b) [docket #85] is GRANTED in part and DENIED in part.
IT IS FURTHER ORDERED that Plaintiff's Motion to Deny as Moot: (1) Defendant's Motion for reconsideration or, in the Alternative, to Certify for Interlocutory Appeal, and (2) Plaintiff's Alternative Motion for Certification under Rule 54(b) [docket # 90] is GRANTED.
NOTES
[1] This figure does not include discipline for absenteeism problems.
[2] The standards governing Plaintiff's Title VII hostile environment claim also apply to Plaintiff's MHRA claims. Tart v. Hill Behan Lumber Co., 31 F.3d 668 (8th Cir.1994); Lane v. Ground Round, Inc., 775 F.Supp. 1219, 1223 (E.D.Mo. 1991). Accordingly, the Court's discussion of Plaintiff's Title VII claims encompasses Plaintiffs MHRA claims.