9 F.Supp.2d 1113 (1998)
Donna Beck SMITH, Plaintiff,
v.
MONSANTO COMPANY, Defendant.
No. 4:94 CV 1440 DDN.
United States District Court, E.D. Missouri, Eastern Division.
April 13, 1998.
*1114 Lisa S. Van Amburg, Van Amburg and Chackes, St. Louis, MO, for Donna Beck Smith.
Clifford A. Godiner, Richard E. Jaudes, Aaron C. Baker, Thompson Coburn, St. Louis, MO, Ellen C. Wilcoxen, Thompson Coburn, St. Louis, MO, for Monsanto Company.
Robert J. Isaacson, Bearden and Mattern, St. Louis, MO, Larry M. Bauer, Stinson and Mag, St. Louis, MO, for Juanita Hinshaw.

JUDGMENT
NOCE, United States Magistrate Judge.
This action came on for trial before the Court and a jury, the parties having consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c), the Court having rendered its rulings in the memorandum filed herewith, and the issues having been duly tried, and the jury having rendered its findings,
IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that, on the Count 2 claim of unlawful retaliation, plaintiff Donna Beck Smith have and recover from defendant Monsanto Company the sum of $300,000, plus nominal damages of $3.00, plus interest thereon and the costs of the action. All other claims of the plaintiff are dismissed with prejudice.

MEMORANDUM
This action is before the Court upon the post-trial motion of the defendant to set aside the jury verdict due to juror misconduct (Doc. No. 153) and for the entry of judgment by the Court. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).
*1115 Plaintiff Donna Beck Smith brought this judicial action against defendant Monsanto Company seeking relief under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-2000e-17, and under the Missouri Human Rights Law, Mo.Rev.Stat. §§ 213.010 et seq. Plaintiff alleged that while she was employed by defendant Monsanto as assistant treasurer, defendant engaged in employment actions adverse to plaintiff on account of her gender.
Three specific claims were submitted to the jury: Count 1 alleged that defendant discriminated against plaintiff on account of her gender by eliminating her job as assistant treasurer without assigning her to a different position which would have preserved or enhanced her previous salary, bonuses, stock options and eligibility for promotion. In response, defendant denied it acted unlawfully, but argued that it engaged in a reduction in force, that plaintiff's position was the most logical to eliminate, and that plaintiff was assigned to an appropriate position. Count 2 alleged that defendant retaliated against plaintiff for alleging discrimination, by imposing adverse terms and conditions of employment upon her. Count 3 alleged that defendant discriminated against plaintiff by constructively discharging her from employment, by making her working conditions intolerable on account of her gender.
Defendant denied these allegations and alleged that plaintiff voluntarily resigned to take employment with another employer, not because she found the working conditions with defendant intolerable.
With respect to plaintiff's Counts 1 and 3, as an affirmative defense defendant alleged that, had plaintiff been a male, it would nevertheless have dealt with plaintiff as it did.

1. The Jury's Findings.
Following the presentation of the trial evidence, the jury found in favor of defendant on Count 1. It answered the following special interrogatory, "No":
On the Count 1 claim of plaintiff of gender discrimination, has plaintiff proven by a preponderance of the evidence that the gender of plaintiff was a motivating factor in the decision of defendant Monsanto Company to eliminate plaintiff's position as Assistant Treasurer in 1992 without assigning plaintiff to another position which would have preserved or enhanced plaintiff's previous salary, bonuses, stock options and eligibility for promotion?
The jury found in favor of plaintiff on the Count 2 claim. Specifically it answered the following interrogatories thus:
3. On the Count 2 claim of plaintiff of retaliation for protected activity, has plaintiff proven by a preponderance of the evidence that:
(a) plaintiff Donna B. Smith had a good faith belief that she had been discriminated against on the basis of her gender in the terms and conditions of her employment which belief was expressed in:
(i) the December 2, 1992, letter of her attorney to defendant Monsanto (Plaintiff's Trial Exhibit 56)?
Answer: Yes.

(ii) the May 7, 1993, written complaint filed by plaintiff with the Missouri Commission on Human Rights (Plaintiff's Trial Exhibit 38)?
Answer: Yes.

(b) following the receipt by defendant of either (i) the December 2, 1992, letter of her attorney to defendant (Plaintiff's Trial Exhibit 56) or (ii) the May 7, 1993, written complaint filed by plaintiff with the Missouri Commission on Human Rights (Plaintiff's Trial Exhibit 38), and because of its receipt of either said document, defendant
(i) failed to consider plaintiff for positions of employment for which she was qualified?
Answer: Yes.

(ii) took plaintiff's name off of succession tables?
Answer: Yes.

(iii) reduced the amount of bonuses awarded to plaintiff for the year 1992?
Answer: Yes.

(iv) intentionally created a hostile work environment for plaintiff?
Answer: No.

*1116 The jury found in favor of the defendant on the Count 3 claim of constructive discharge. Specifically, it found that plaintiff failed to prove that after March 1994, defendant made plaintiff's working conditions intolerable to a reasonable person. See Jury's Answer to Special Interrogatory No. 4, filed July 25, 1997. Further, on this claim it found that defendant proved that it would have treated plaintiff the same way it did, if she had been a male. Id. at Special Interrogatory No. 5.
The jury further found that plaintiff suffered damages of (a) $275,000.00 in lost wages and bonuses; (b) $500,000.00 in emotional pain and mental suffering; and (c) $60,000.00 in lost stock options.

2. Juror conduct.
Defendant has moved to set aside the jury's findings because of juror misconduct. Specifically, defendant alleges that juror Mary Roth, during the jury selection process, in answering the written questionnaire submitted to the jury, knowingly misstated under oath that her husband had not ever filed a lawsuit. See Jury Questionnaire submitted to Juror Mary Roth, Question No. 15, filed under seal November 24, 1997. Following the trial of this action, defendant learned and alleged that the husband of juror Roth, Thomas Roth, was a plaintiff in a 1994 lawsuit, Wurm v. Conway, Cause No. 934-320, filed in the Circuit of the City of St. Louis. This action assertedly involved the promotion practices of the St. Louis Metropolitan Police Department, including alleged violations of the Equal Protection Clause of the Constitution of the United States.
A hearing was held on this motion on December 2, 1997. From the evidence adduced during this hearing, the Court makes the following findings of fact and conclusions of law:

FACTS
1. Thomas Roth is the husband of juror Mary Roth and in 1993 was a sergeant with the St. Louis Metropolitan Police Department.
2. During 1993 St. Louis Metropolitan Police Department personnel were involved in allegations of racial discrimination in the granting of promotions. Thomas Roth had taken the promotion test but had not received a promotion. The Roths discussed his failure to receive the promotion.
3. During 1994 a class action was commenced in the Circuit Court of the City of St. Louis against the St. Louis Metropolitan Police Department alleging racial discrimination in the awarding of promotions. Thomas Roth was named as a party plaintiff in that lawsuit. Neither Thomas Roth nor juror Mary Roth were specifically made aware that Thomas Roth was named as a plaintiff in that lawsuit.
4. When juror Mary Roth answered the jury questionnaire during the jury selection procedure in this action, she did not remember the lawsuit in which her husband was named a plaintiff.
5. Following the trial of this action and after the jury's findings were filed, juror Mary Roth was among a few of the jurors who personally congratulated the plaintiff on prevailing at trial.

DISCUSSION
Defendant argues that the failure of juror Mary Roth to state that her husband had filed a lawsuit was willful and untruthful, thereby exhibiting a bias in favor of the plaintiff which was undisclosed to the parties.
The motion to set aside the jury verdict for juror misconduct will be denied. The Court has found that juror Mary Roth answered the questionnaire's question, about whether a family member had filed a lawsuit, consistent with the best of her recollection. Because she did not remember, if she ever specifically knew, that her husband had been named as a plaintiff in the state court employment lawsuit, her answer to the written voir dire question, although inaccurate, was honest and did not demonstrate impermissible bias in favor of the plaintiff. McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548, 556, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984); United States v. Williams, 77 F.3d 1098, 1100 (8th Cir.), cert. denied, ___ U.S. ___, 117 S.Ct. 392, 136 L.Ed.2d 308 (1996).

*1117 3. Appropriate Judgment.

Following the filing of the jury's findings in this action, the Court ordered the parties to file memoranda as to the proper judgment to be entered. Also, on August 25, 1997, the Court conducted a hearing on plaintiff's entitlement to equitable relief by reason of the jury's findings.
In light of the arguments of the parties at this juncture of the action, the Court must be guided by several relevant legal principles. First, the Court must apply the law to the facts found by the jury, crediting the substantial evidence in the entire record before the jury that supports the consistency of its findings. Fed.R.Civ.P. 49(a), 58; Sims v. Sauer-Sundstrand Co., 130 F.3d 341, 343 (8th Cir.1997); Summit v. S-B Power Tool, 121 F.3d 416, 420-21 (8th Cir.1997), cert. denied, ___ U.S. ___, 118 S.Ct. 1185, 140 L.Ed.2d 316 (1998); Lavoie v. Pacific Press & Shear Co., 975 F.2d 48, 53 (2nd Cir.1992); Meadows v. State Univ. of N.Y., 160 F.R.D. 8, 11 (N.D.N.Y.1995). Second, to the extent the Court must consider non-jury, equitable issues, any findings of historical fact which the Court makes must not be inconsistent with the facts necessarily determined by the jury, absent extraordinary circumstances. Bush v. Marshalltown Medical and Surgical Center, 123 F.3d 1130, 1132 n. 2 (8th Cir. 1997); Sisco v. J.S. Alberici Constr. Co., Inc., 655 F.2d 146, 151 (8th Cir.1981), cert. denied, 455 U.S. 976, 102 S.Ct. 1485, 71 L.Ed.2d 688 (1982).

4. Economic damages.
The jury found, on plaintiff's Count 2 claim that defendant unlawfully retaliated against plaintiff and that plaintiff suffered two types of compensatory damages, lost economic benefits of employment and emotional pain and suffering. Defendant argues that the jury's findings in its favor on the Count 1 and Count 3 claims, that it did not discriminate against plaintiff on account of her gender and that it did not constructively discharge plaintiff, require the Court to award plaintiff only nominal damages on the Count 2 claim. As to the lost benefits of employment, the Court agrees with defendant.
Regarding the Count 2 claim, the jury found that defendant retaliated against plaintiff following receipt of the December 2, 1992, letter of her attorney and following her charge of discrimination which was filed with the Missouri Commission on Human Rights on May 7, 1993. The jury further found that the retaliation was defendant's failure to consider her for positions of employment for which she was qualified, taking her off the succession tables, and reducing the amount of her bonus for 1992.
The only trial evidence of plaintiff's compensatory damages before the jury was based upon her own speculative testimonial assumptions that she would have remained at the L-43 compensation level, that she would have continued to receive excellent reviews, that she would have received an 11 per cent salary increase each year until she reached the middle of the L-43 range and then a 7 per cent increase each year thereafter, that the Monsanto bonus pools would continue to be doubled through June 1997 at 46 per cent of her salary, and that she would have received the benefit of the 5 for 1 Monsanto stock split that occurred in 1996. After her stock options vested, plaintiff would liquidate them when they reached a $20.00 per share gain. Plaintiff also assumed that she had been constructively discharged, and that, had she not been constructively discharged, she would have remained employed by defendant through June 30, 1997. The jury did not find that plaintiff was unlawfully deprived of L-43 compensation and it did find that she was not constructively discharged.
The trial evidence did not indicate that the removal of plaintiff from the succession tables directly caused her economic injury. The evidence concerning the succession tables indicated that they were reconstructed each year and that they were not mandatory. Thus, any finding that plaintiff suffered substantial economic harm by her being taken off the tables was entirely speculative and not substantial evidence legally sufficient to support an award of economic damages. For defendant's act of retaliating against plaintiff in this respect, the Court will limit plaintiff's recovery to nominal damages of $1.00. Brewer v. Chauvin, 938 F.2d 860, 864 (8th Cir.1991).
Similarly, the jury's finding of economic damages resulting from defendant's *1118 failure to consider plaintiff for several positions instead of moving her back to director of investor relations is not supported by substantial evidence. The trial evidence was legally insufficient to prove that plaintiff would likely have received any of those jobs. In fact, the evidence indicated that plaintiff, whether she was qualified for them or not, was not available for them when they were filled. Also, even assuming that plaintiff was qualified and available for them, the claim is that defendant did not consider her for them, not that she did not receive them. There was no substantial evidence adduced at trial which was legally sufficient to prove that, in the reduction in force circumstances and the other circumstances attending defendant's business operations, plaintiff would likely have been assigned to any of them. Also, the trial evidence was legally insufficient to prove what the future compensation for those positions would have been had plaintiff been assigned to them. Similarly, the Court will limit plaintiff's damages in this regard to nominal damages of $1.00. Id.
As to the finding that defendant unlawfully reduced plaintiff's bonus for 1992 in retaliation, the trial evidence is legally insufficient to prove what the 1992 bonus should have been in order to determine the amount of lost bonus. Plaintiff is limited to nominal damages of $1.00. Id.
The jury's finding that plaintiff lost $60,000 in stock options is not supported by substantial evidence. The trial evidence is undisputed that the stock options had to be held for at least one year before the recipient could exercise them and thereafter sell them, in order to realize a financial benefit. In light of the jury's repeated finding that defendant did not constructively discharge her, when plaintiff left defendant's employment in November 1994, only nine months had passed since the issuance of the stock options in 1993 for 1992. Therefore, plaintiff could not have exercised any additional stock options which should have been issued to her in 1993 or thereafter.
Because the jury found that defendant did not constructively discharge plaintiff, and is not otherwise liable for the cessation of plaintiff's employment with defendant in November 1994, plaintiff is not entitled to any front pay or prospective economic relief. Id.

5. Emotional pain and mental suffering.
The jury awarded plaintiff $500,000 in damages for the emotional pain and mental suffering plaintiff suffered on account of defendant not considering her for positions of employment, for being taken off the succession tables, and for having her bonuses reduced for 1992, all in retaliation for the December 2, 1992, letter of plaintiff's counsel and the May 7, 1993, charge of discrimination filed with the Missouri Commission on Human Rights. The Court believes that the trial evidence is legally sufficient to support an award of some substantial compensatory damages for mental anguish based upon the jury's findings under the Count 2 claim of retaliation. Trial evidence indicated that defendant's retaliatory acts added to her mental distress. Edwards v. Jewish Hospital of St. Louis, 855 F.2d 1345, 1352-53 (8th Cir. 1988). This is so, even in light of the jury's findings that defendant did not discriminate against plaintiff and did not constructively discharge her. Collins v. Mallinckrodt Chemical, Inc., 959 F.Supp. 1123, 1129-30 (E.D.Mo.1996).
However, the Court concludes from the jury's findings and the trial evidence consistent with the jury's findings, that the jury's finding that defendant's actions caused plaintiff $500,000 in damages is excessive in that that amount is not supported by substantial evidence. Stineman v. Fontbonne College, 664 F.2d 1082, 1088 (8th Cir.1981).
The causes of plaintiff's mental anguish included those factors found by the jury and those factors about which there is no substantial dispute in the evidence. The only factors found by the jury which are sufficient to support the award are the acts of retaliation by defendant, its not considering her for positions for which she was qualified, taking her off the succession tables, and reducing her bonuses for 1992. These causes of her mental anguish must be considered with the findings that plaintiff was not unlawfully constructively discharged from employment with defendant and with the other causes of difficulty in her life, for which defendant was not *1119 responsible. Edwards, 855 F.2d at 1353. These causes included the difficulties in her personal, family life which were substantial.
Considering the substantial evidence at trial and the jury's findings, the Court concludes that an award in excess of $300,000 for the mental anguish suffered by plaintiff, for which defendant is legally responsible, is not supported by substantial evidence and is excessive. Richardson v. Communications Workers of America, AFL-CIO, 530 F.2d 126, 129-30 (8th Cir.), cert. denied, 429 U.S. 824, 97 S.Ct. 77, 50 L.Ed.2d 86 (1976). Therefore, the Court will enter judgment for plaintiff in this amount plus the aforesaid nominal damages. Guzman v. Western State Bank of Devils Lake, 540 F.2d 948, 953 (8th Cir.1976).

6. Other equitable relief.
Plaintiff seeks an order that defendant provide her with favorable references for prospective employers. During the post-trial hearing on equitable relief, plaintiff indicated that she seeks an order that defendant not provide negative information about her work with defendant. Because defendant's general policy is to provide only the dates of employment and no statements about the quality of the employee's performance, there is no issue as to whether defendant would provide prospective employers negative information about plaintiff. Therefore, plaintiff's claim to this type of relief is moot.
An appropriate judgment is issued herewith.